Receipt #0599995

ORIGINAL

ECF

FILED
OCT 23 2003
U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FOREST PRODUCTS NORTHWEST, INCORPORATED,

*Plaintiff,*

v.

UNITED STATES,

*Defendant.*

Case No. 03-2485C

## COMPLAINT

COMES NOW Plaintiff, Forest Products Northwest, Inc., d.b.a. Northwest Forest Products ("NWFP"), by and through its attorney, A. Woodson Stuart, Esq., 2315 Wisconsin Avenue, NW, Second Floor, Washington, D.C. 20007, Tel: (202) 297-3196, Fax: (202) 338-0270, and hereby submits this complaint, and as ground in support thereof states as follows:

### Jurisdiction

1. This is an action for a refund of $20,357.84 paid under protest to the U.S. Customs and Border Protection Service ("U.S. Customs"). *See* Ex. 1.
2. This Court has jurisdiction over such actions under the Tucker Act. *See* 28 U.S.C. § 1491(a)(1); *Trayco Inc. v. United States,* 994 F.2d 832 (Fed. Cir. 1993); *High Star Toys v. United States,* 32 Fed. Cl. 176 (1994).

### Facts Common to All Counts

3. NWFP is a U.S. corporation whose principal place of business is located at 1476 Thorne Road, Tacoma, Washington.
4. NWFP is a lumber remanufacturer that specializes in cedar products and imports some of its

input material from Canada.

5. At issue here are two importations of rough edge-glued cedar lumber that NWFP entered in the first week of October 2003. *See* Ex. 1 (entry papers, Automated Commercial System statements showing payments to U.S. Customs, and cover letter protesting payments).

6. U.S. Customs classified the merchandise under Subheading 4407.10.00 of the Harmonized Tariff Schedule of the United States ("HTSUS").[1] Ex. 2.

7. Subheading 4407.10.00, HTSUS, is one of the tariff provisions covered by the final antidumping and countervailing duty ("AD/CVD") orders on Canadian softwood lumber.[2]

8. These orders impose a combined AD/CV duty of almost 30% on imports of subject softwood lumber from Canada.

9. U.S. Customs assessed $20,357.84 in estimated AD and CV duties, *see* 19 U.S.C. § 1671f & 1673g,[3] and NWFP paid the money under protest. *See* Ex. 1.

10. **<u>Edge-glued lumber is expressly excluded from Heading 4407, HTSUS, by the relevant chapter notes.</u>** *See* Notes to Chapter 44, HTSUS; *see also* General Rule of Interpretation 1, HTSUS (classification under the HTSUS "shall be determined according to the terms of the headings and any relative section or chapter notes."); Customs Service Ruling 087616 (Aug.

---

[1] Heading 4407, HTSUS, covers: "Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed, of a thickness exceeding 6 mm."

[2] Antidumping duties are supposed to raise the price of imported goods in the U.S. market to a "fair value" (e.g., no less than the price at which the foreign producer sells the same merchandise in his home market). Countervailing duties are supposed to offset foreign government subsidies on the production of imported goods. The U.S. Department of Commerce ("DOC") defines the scope of AD/CVD orders issued by that agency in conjunction with the U.S. International Trade Administration. U.S. Customs interprets and applies DOC's scope definition in import transactions.

[3] Ordinary customs duties are not assessed until "liquidation" of the "entry," which occurs almost a year after importation. The importer then may "protest" U.S. Customs' classification of the entry administratively subject to judicial review in the U.S. Court of International Trade under 28 U.S.C. § 1581(a). The liquidation of entries subject to a final AD or CVD order, however, is "suspended" until the DOC issues liquidation instructions to U.S. Customs, which

20, 1990) ("Edge-glued lumber does not meet the definition of lumber in . . . heading 4407.").

11. **DOC specifically excluded "edge-glued wood" from AD/CV duties on Canadian softwood lumber.**[4]

12. In this action, NWFP alleges that:

(a) the subject edge-glued lumber is properly classified under Heading 4421, HTSUS, the "basket provision" for "articles of wood" not specifically provided for ("n.s.p.f."); and

(b) in any event, the subject edge-glued lumber is not properly classified under Heading 4407, HTSUS, and is otherwise not subject to the AD/CV duty orders on Canadian softwood lumber, because of the explicit exclusions of edge-glued lumber from both.[5]

13. Alternatively, NWFP argues that U.S. Customs must follow its own rulings classifying substantially identical merchandise under Heading 4421, HTSUS, unless and until those rulings are modified in a notice and comment proceeding under Section 625(c) of the Customs Modernization Act of 1993 ("the Mod Act"), 19 U.S.C. § 1625(c).

*Description and Pictures of the Subject Merchandise*

14. The subject merchandise is made by gluing pieces of rough, green, dimension lumber together edge to edge, using special machinery and super-adhesive glue to form larger pieces of various dimensions and lengths. *See* Ex. 3.

---

can take several years if there are court challenges. Thus, a Tucker Act suit is the only way that NWFP can obtain timely judicial review of U.S. Customs' application of the AD/CVD orders on Canadian softwood lumber to its merchandise.

[4] *See Certain Softwood Lumber from Canada,* 68 Fed. Reg. 44048, 44048 (Dep't Comm. July 25, 2003) (preliminary results of antidumping duty review); *Certain Softwood Lumber from Canada,* 68 Fed. Reg. 24436, 24437-38 (Dep't Comm. May 7, 2003) (final results of countervailing duty review). These rulings are attached hereto as Exhibit 7.

[5] *See* Customs Service Ruling I85263 (Sept. 12, 2002) (classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS); Customs Service Rulings B80847 (Jan. 23, 1997) (same); Customs Service Ruling 087616 (Aug. 20, 1990) (same).

15. The specific products at issue here consist of lumber in lengths of from 8 to 20 feet[6] with the following nominal dimensions:



a. 1 ¼ inches by 8 inches.

b. 1 ¼ inches by 12 inches.

c. 1 ¼ inches by 16 inches.

d. 1 ¼ inches by 20 inches.

e. 1 ¼ inches by 24 inches.

---

f. 1 ¾ inches by 8 inches.

g. 1 ¾ inches by 12 inches.

h. 1 ¾ inches by 16 inches.

i. 1 ¾ inches by 20 inches.

j. 1 ¾ inches by 24 inches.

---

k. 2 inches by 8 inches.

l. 2 inches by 12 inches.

m. 2 inches by 16 inches.

n. 2 inches by 20 inches.

o. 2 inches by 24 inches.

---

p. 4 inches by 8 inches.



[6] All of the lumber pictured here comes from the importations in question. The four pictures on the bottom are the two-foot long samples filed with the Court. A set of samples was provided to and reviewed by the National Import Specialist at U.S. Customs, Mr. Paul Garretto, before the Notice of Action was was issued on October 16, 2003.

16. Typical finished products made from edge-glued panels or blanks include table tops, drawer fronts, upholstered furniture frames, cabinet fronts, and shelving products. Bob Smith and Phil Arman, *Exploring Value Added Options*, Southern Lumberman (Ex. 4) (advocating the manufacture of edge-glued lumber to increase the value of U.S. lumber exports).[7]



17. Edge-glued cedar panels and blanks are used as an input in the manufacture of outdoor signs as well. *See* Ex. 5. They are also used in to make dimension lumber products (e.g., fascia) in widths that otherwise would not be available or would be too expensive. *See* Ex. 6 (excerpts from promotional literature of cedar lumber remanufacturers).

[7] Pictured on the left is one of the samples filed with the Court. It was made by drying, planing, and sanding cedar lumber from a previous importation of subject merchandise into material suitable for shelving, among other things. (A sample was also provided to Mr. Garretto and local port officials.) The other pictures show an example of shelves made from finished edge-glued cedar lumber.

*The Statutory Scheme*

18. The HTSUS implements the U.S. "trade agreement obligation," as a member of the World Customs Organization ("WCO"), to use the Harmonized Commodity Description and Coding System ("HS"), 19 U.S.C. § 3001, in classifying imported merchandise for customs duty purposes.

19. The first part of Chapter 44, HTSUS (Headings 4401 to 4413) provides for "wood" in various raw and semi-processed forms, including what is commonly referred to as "timber" and "lumber."

20. The rest of Chapter 44 specifies various further manufactured wood products or "Articles of wood" (Headings 4414 to 4420), and then has a catch-all provision for unspecified "Other articles of wood" (Heading 4421).

21. Softwood "lumber" has been consistently given duty free treatment under U.S. tariff schedules, while "articles of wood," including "edge-glued lumber," have been subject to customs duty ("dutiable"). *See, e.g.*, Tariff Schedules of the United States, Items 202.52 & 202.54 (1988).[8]

22. The adoption of the HTSUS in 1989 was "revenue neutral," meaning that ambiguities in the HTSUS may not be construed in a way that would make a formerly dutiable product non-dutiable or *vice versa.*[9]

---

[8] As a result of NAFTA, on January 1, 1998, duties were eliminated on imports of "articles of wood" from Canada, but they remain in effect for non-NAFTA countries.

[9] *See* U.S. Int'l Trade Comm'n, Continuity of Import and Export Trade Statistics After Implementation of the Harmonized Commodity Description and Coding System, ITC Pub. 2051, at 32 (Jan. 1988).

*The Mod Act*

23. Section 625(c) of the Mod Act requires U.S. Customs to follow its own rulings involving substantially identical merchandise unless and until those rulings are revoked or modified in a notice and comment proceeding. *See* 19 U.S.C. § 1625(c).

24. Moreover, the effective date of a revocation or modification under Section 625(c) is not until 60 days *after* publication of a notice of such action in the *Customs Bulletin*. *See id.*[10]

25. U.S. Customs has not revoked or modified Customs Service Ruling 087616 (Aug. 20, 1990) ("Edge-glued lumber does not meet the definition of lumber in . . . heading 4407."), or the rulings classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS.[11]

**Count I—Misclassification**
**<u>of the Subject Imports under the HTSUS</u>**

26. The preceding allegations are incorporated by reference herein.

27. The canons of construction to be applied in interpreting the HTSUS are codified as the General Rules of Interpretation ("GRIs") and the U.S. Additional Rules of Interpretation ("USARIs").

28. GRI 1 provides that classification "shall be determined according to the terms of the headings and any relative section or chapter notes."[12]

---

[10] *See American Bayridge Corp. v. United States*, 35 F. Supp. 2d 922, 941-42 (Ct. Int'l Trade 1998) (rejecting the argument that Customs Service Rulings apply only to the importer who obtained the ruling), *vacated in part on other grounds without pub. op.*, 1999 WL 997303 (Fed. Cir. Oct. 26, 1999).

[11] Customs Service Ruling I85263 (Sept. 12, 2002) (classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS); Customs Service Rulings B80847 (Jan. 23, 1997) (same).

[12] GRI 1 is essentially a codification of the plain meaning rule, which allows resort to extrinsic evidence of legislative intent only if the statutory language, read in light of ordinary dictionary definitions, fails to produce a clear answer. *See, e.g., Sharp Microelectronics Technology, Inc. v. United States*, 122 F.3d 1446, 1461 (Fed. Cir. 1997) (rejecting

29. USARI 1(a) reads as follows:

> a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use[.]

30. A product is classifiable in a heading only if its terms provide a "complete and accurate description" of the merchandise. *Boen Hardwood Flooring, Inc., v. United States,* 254 F. Supp. 2d 1349, 1359-60 (Ct. Int'l Trade 2002).

31. If only one heading provides such a description, GRI 1 (or, if applicable, USARI 1(a)) requires classification in that heading.

32. If more than one heading provides a complete and accurate description of the merchandise, GRI 3 provides in relevant part that the merchandise shall be classified under "[t]he heading which provides the most specific description" or, if equally specific, under "the heading which occurs last in numerical order among those which equally merit consideration."

33. The terms of Heading 4407, HTSUS ("Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded, or finger-jointed"), do not provide a complete and accurate description of the subject merchandise. *See Boen,* 254 F. Supp. 2d at 1359-60 ("[H]eading 4409, HTSUS, addresses only shaping and planing operations . . . [and] therefore does not provide a complete and accurate description of the subject merchandise.").

34. In addition, edge-glued lumber is explicitly excluded from Heading 4407, HTSUS, by the notes to Chapter 44.

35. By contrast, Heading 4421, HTSUS ("Other articles of wood"), provides a complete and

---

argument based on the Explanatory Notes that conflicted with the plain meaning of the terms of the HTSUS).

accurate description of the subject merchandise, because it fits the literal definition of a manufactured "article" made from "wood." *See, e.g.*, Customs Service Ruling I85263 (Sept. 12, 2002) (classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS); Customs Service Rulings B80847 (Jan. 23, 1997) (same).

36. Because only Heading 4421, HTSUS, provides a complete and accurate description of the subject merchandise, it must be classified there under GRI 1.

37. Moreover, even if Heading 4407, HTSUS, also provided a complete and accurate description of the merchandise, it could not be classified there by virtue of the explicit exclusion in the notes to Chapter 44.

38. Accordingly, U.S. Customs misclassified the subject imports under Heading 4407, HTSUS, and erred in applying the AD/CVD orders on Canadian softwood lumber to them.

**Count II—Misclassification of the**
**<u>Subject Imports under the Under the Mod Act</u>**

39. The preceding allegations are incorporated by reference herein.

40. Section 625(c) of the Mod Act requires U.S. Customs to follow its own rulings involving substantially identical merchandise unless and until those rulings are revoked or modified in a notice and comment proceeding. *See* 19 U.S.C. § 1625(c).

41. Moreover, the effective date of a revocation or modification under Section 625(c) is not until 60 days *after* publication of a notice of such action in the *Customs Bulletin*. *See id.*[13]

42. U.S. Customs has not revoked or modified Customs Service Ruling 087616 (Aug. 20, 1990)

---

[13] *See American Bayridge Corp. v. United States*, 35 F. Supp. 2d 922, 941 (Ct. Int'l Trade 1998) (rejecting the argument that Customs Service Rulings apply only to the importer who obtained the ruling), *vacated in part on other grounds without pub. op.*, 1999 WL 997303 (Fed. Cir. Oct. 26, 1999).

("Edge-glued lumber does not meet the definition of lumber in . . . heading 4407."), or the rulings classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS.[14]

43. Accordingly, U.S. Customs misclassified the subject imports under Heading 4407, HTSUS, and erred in applying the AD/CVD orders on Canadian softwood lumber to them.

**Count III—Misclassification of the**
**<u>Subject Imports Under the AD/CVD Orders</u>**

44. The preceding allegations are incorporated by reference herein.

45. U.S. Customs applied the AD/CVD orders on Canadian softwood lumber to the subject imports on the ground that they are properly classified under Heading 4407, HTSUS.

46. However, the AD/CVD orders on Canadian softwood lumber explicitly exclude edge-glued lumber and merchandise that is "properly classified" in Subheading 4421.90.9700, HTSUS.

47. Thus, U.S. Customs erred in applying the AD/CVD orders to NWFP's imports.

---

[14] Customs Service Ruling I85263 (Sept. 12, 2002) (classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS); Customs Service Rulings B80847 (Jan. 23, 1997) (same).

**Conclusion and Prayer for Relief**

WHEREFORE on the premises considered, NWFP prays for a judgment awarding a refund of all payments made under protest to U.S. Customs in connection with the described transactions, and such other and further relief as the Court deems just.

Respectfully submitted,

Date: October 21, 2003

A. Woodson Stuart, Esq.
2315 Wisconsin Avenue, NW
Second Floor
Washington, D.C. 20007
Tel: (202) 279-3196
Fax: (202) 338-0270

*Attorney for Plaintiff Northwest Forest Products*

## TABLE OF EXHIBITS

1. Entry papers, Automated Commercial System statements, and cover letter protesting payments.

2. Notice of Action (Customs Form 29) issued to NWFP by U.S. Customs on October 16, 2003.

3. Specifications and laboratory report on glue used to make the subject merchandise.

4. Bob Smith and Phil Arman, *Exploring Value Added Options*, Southern Lumberman.

5. Material showing cedar signs and sign blanks.

6. Material showing other typical cedar lumber products and applications.

7. Recent Department of Commerce rulings indicating scope of AD/CVD orders on Canadian softwood lumber.

8. Copy of tariff provisions and Customs Service Rulings cited in the Complaint.