# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FOREST PRODUCTS NORTHWEST, INCORPORATED, *Plaintiff*, | |
| *v.* | Case No. 03-2485C<br>The Honorable Susan G. Braden, J. |
| UNITED STATES, *Defendant.* | |

## PLAINTIFF NORTHWEST FOREST PRODUCTS' MOTION *IN LIMINE*

COMES NOW Plaintiff, Forest Products Northwest, Inc., by and through its attorney, A. Woodson Stuart, Esq., and hereby moves for an order excluding argument or evidence relating to the actual use of the merchandise whose import classification is at issue in this refund action, based on the points and authorities set forth in the accompanying memorandum.

A hearing is requested on this motion.

Respectfully submitted,

Date: November 25, 2003

s/Andrew Woodson Stuart_
Andrew Woodson Stuart, Esq.
2315 Wisconsin Avenue, NW
Second Floor
Washington, D.C. 20007
Tel: (202) 279-3196
Fax: (202) 338-0270

*Attorney for Plaintiff Northwest Forest Products*

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FOREST PRODUCTS NORTHWEST, INCORPORATED, *Plaintiff,* | ) | |
| *v.* | ) | Case No. 03-2485C<br>The Honorable Susan G. Braden, J. |
| UNITED STATES, *Defendant.* | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF**
**NORTHWEST FOREST PRODUCTS' MOTION *IN LIMINE***

COMES NOW Plaintiff, Forest Products Northwest, Inc., doing business as Northwest Forest Products ("NWFP"), by and through its attorney, A. Woodson Stuart, Esq., 2315 Wisconsin Avenue, NW, Second Floor, Washington, D.C. 20007, Tel: (202) 297-3196, Fax: (202) 338-0270, and hereby submits this memorandum in support of its motion *in limine*, and as ground in support thereof states the following:

## I. BACKGROUND

This is a customs classification case. The Plaintiff, NWFP, is a Tacoma Washington based lumber remanufacturer. Compl. ¶¶ 3-4. U.S. Customs applied the antidumping and countervailing duty ("AD/CVD") orders on Canadian softwood lumber to the subject imports of edge-glued cedar lumber and assessed estimated duties pursuant to 19 U.S.C. §§ 1671f & 1673g. *See* Compl. ¶¶ 5-9 & 14-17. NWFP paid the assessments under protest and brought this refund action, because judicial review otherwise might not be available for years due to a suspension of the liquidation of entries subject to the AD/CVD orders on Canadian softwood lumber. *See*

Compl. ¶ 7 & n.2.[1] Presently before the Court is NWFP's motion *in limine* to exclude argument and evidence related to the actual use of the subject importations or the condition of the merchandise after post-importation processing. This motion is based on the controlling Supreme Court case law set forth below.

## II. FACTS RELATED TO THE ACTUAL USE OF THE SUBJECT IMPORTATIONS ARE IRRELEVANT AND INADMISSIBLE.

The Federal Rules of Evidence make irrelevant facts inadmissible. *See* Fed. R. Evid. 402. Inadmissible facts cannot be used at trial, or to support a motion for summary judgment, if a timely objection is made. *See Magone v. Luckemeyer,* 139 U.S. 612, 614 (1891) (evidence of what the importer did with his merchandise after importation was "properly excluded" at trial); CFC Rule 56(e) (summary judgment motion must be supported by "such facts as would be admissible in evidence").

It is a longstanding doctrine of customs law that, unless Congress defines the coverage of a relevant tariff provision in terms of "actual use" (either explicitly or by clear implication),[2] the classification of imported merchandise is determined strictly by the physical characteristics of the merchandise, in its form or condition as imported, and that pre- or post-importation changes in the form or condition of the merchandise are irrelevant. This doctrine can be traced back at least as far as Daniel Webster's argument in *United States v. Levitt*, 26 Fed. Cas. 919 (D. Mass. 1842), and is now reflected in U.S. Additional Rule of Interpretation 1(a) of the Harmonized

---

[1] Before filing this action, the undersigned counsel confirmed with the National Import Specialist, Paul Garretto, that the issuance of a CF-29 to NWFP (*see* Compl. Ex. 2) was not a "protestable decision," and that NWFP would have to wait for liquidation to file a protest with U.S. Customs subject to review in the Court of International Trade under 28 U.S.C. § 1581(a).

[2] The tariff heading asserted by the government in this case, Heading 4407, HTSUS, is clearly not an "actual use" provision.

Tariff Schedule of the United States ("HTSUS").[3] In *Levitt*, a lead merchant had material cast into busts before importation solely to obtain the benefit of more favorable tariff treatment for "busts of metal." The United States charged fraud. The court emphatically rejected the charge. Thus began a dialectic that continues to this day.

The Supreme Court first entered the fray in *Merritt v. Welsh*, 104 U. S. 694 (1881). In *Merritt*, the importer added artificial color to sugar during the manufacturing process for the sole purpose of "evading" the duty on refined sugar, which at the time was defined in terms of color, specifically, "above number seven, Dutch standard in color." It was undisputed that the imported sugar was below No. 7 in the Dutch color standard; that it was darkened during the process of manufacture; and that there was no commercial purpose for the artificial coloring.

Pursuant to "general instructions from the Treasury Department," which regarded such manipulation as a "fraud on the revenue," the local customs officers classified the imported merchandise as refined sugar. The importer paid the assessment under protest and brought a refund action in the U.S. Circuit Court for the Southern District of New York. The case was tried to a jury, and the court directed the verdict for the importer. The United States appealed from the Circuit Court's judgment to the Supreme Court.

In the Supreme Court, "[g]reat stress [was] laid on the charge that sugars are manufactured in dark colors on purpose to evade our duties." The Court issued a stinging rebuke to this charge:

---

[3] This rule reads as follows:

> a tariff classification controlled by use (other than actual use) is to be determined [by] the use . . . at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use[.]

> Suppose this is true; has not a manufacturer a right to make his goods as he pleases? If they are less marketable, it is his loss; if they are not less marketable, who has a right to complain? If the duties are affected, there is a plain remedy. Congress can always [change the law]. . . . If the quantity of saccharine matter in sugar, or its state of advancement from the raw state to a condition of refinement, is desirable as a dutiable standard, ***let it be so declared by the laws; and then the merchant will know on what he has to depend. Uncertainty and ambiguity are the bane of commerce. Discretion in the custom-house officer should be limited as strictly as possible.*** It has been said with much truth, "Where law ends, tyranny begins." . . .

*Id.* at 704 (emphasis added).

The Court similarly rejected the argument that the importer's manipulation violated the "intent" of Congress in using the Dutch color standard as a proxy for degree of refinement. In so doing, the Court articulated the strict "plain meaning rule" that is now codified as General Rule of Interpretation 1 of the HTSUS:

> . . . Whatever may have been in the minds of individual members of Congress, the legislative intent is to be sought, first, from the words they have used. If these are clear, we need go no further; if they are obscure or ambiguous, then the intent may have to be sought out by reference . . . to anything that will throw light on the meaning . . . . But there is no obscurity or ambiguity here. . . . If the test adopted fails to effect the desired object, . . . it can be changed at any moment. And ***it is better to submit to a temporary inconvenience than to set the laws all afloat by laying down a canon of construction which leaves the plain words***, and seeks . . . the supposed intent of the legislature . . . . If experience shows that Congress acted under a mistaken impression, that does not authorize the Treasury Department . . . to make new laws which they imagine Congress would have made had it been properly informed . . . . ***It may be that our tariff of duties is evaded*** by giving to sugars, in the process of manufacture, a low grade of color. If this be so, it is no more than every manufacturer does; namely, so to manufacture his goods as to avoid the burden of high duties, provided he can do it without injuring their marketability . . . less than the duties involved. ***So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred***.

*Id.* (emphasis added).

The Supreme Court reinforced its landmark opinion in *Merritt* with a series of decisions ten years later involving a variety of products. In *Worthington v. Robbins,* 139 U.S. 337 (1891), the importer brought an action in the U.S. Circuit Court for the District of Massachusetts "to recover an alleged excess of duties, paid under protest," on entries of merchandise the importer had classified as "white hard enamel" and the collector reclassified as "watch materials" based on the actual use intended by the importer, namely, to coat watch faces.

The case was tried without a jury on an "agreed statement of facts." The Circuit Court rendered a verdict for the importer, rejecting the collector's position that the subject enamel was properly classified as "watch materials," and subject to the higher rate of duty assigned to that classification, because that was the actual use intended by the importer (enamel is used to coat watch faces). The United States appealed to the Supreme Court.

On appeal, the Supreme Court affirmed the Circuit Court's judgment. In so doing, the Supreme Court articulated the principle that is now reflected in U.S. Additional Rule 1(a) of the Harmonized Tariff Schedule of the United States ("HTSUS"):

> [A]lthough it is stated in the statement of agreed facts that the enamel in controversy was imported by the plaintiffs for use in making watch dials, and was in fact so used, there was nothing to prevent them from selling it to persons who would use it for the other purposes for which it is stated it is used.
>
> . . . It is apparent . . . that the customs officers could not determine from an examination of the article . . . that it was to become the material of a watch. ***In order to produce uniformity in the imposition of duties, the dutiable classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported.*** In order to be dutiable as "watch materials," the article, ***when imported,*** must be in such form of manufacture as to show its adaptation to the making of watches.

*Id.* at 341 (emphasis added).

In *Seeberger v. Farwell*, 139 U.S. 608 (1891), the importer brought an action in the U.S. Circuit Court for the Northern District of Illinois "to recover an alleged excess of duties, paid under protest," on entries of merchandise the importer had classified as garments "composed in part of wool" and the collector reclassified as garments "composed wholly of wool" based on the small amount of cotton the importer had added to the material solely to avoid the duty on all wool garments.

The case was tried to the court without a jury, and the verdict was rendered for the importer. The United States appealed, and the Supreme Court affirmed. The Court again rejected the argument made by the United States in the *Merritt* and *Worthington* cases, this time adding a new element to the rule established by those decisions (i.e., that merchandise classification is determined by the form or condition of the merchandise at importation, regardless of the actual use intended by the importer). This new element was the recognition that importers have a fundamental "right" to import merchandise in any form or condition they please, even if their choice of form or condition is dictated solely by a desire to avoid duties. Specifically, the Supreme Court said the following:

> manufacturers and importers ha[ve] the right to adjust themselves to the [terms] of the tariff, and to manufacture the goods with only a small percentage of cotton, for the purpose of making them dutiable at the lower rate . . . [A]lthough the goods in question contained so small an amount of cotton that the ordinary dealer . . . would not detect the cotton without a close and careful examination, that did not change the legal right of the plaintiffs to bring their goods within the operation of the clause involved, by the admixture of even a small percentage of cotton, if they could do so [profitably] . . . .

*Id.* at 611.

In *Magone v. Luckemeyer*, 139 U.S. 612 (1891), the Court addressed "the same question presented" in *Seeberger*, and likewise held that the addition of an imperceptible amount of cotton

to wool thread removed its imported garments from the tariff provision for garments made "wholly of wool," regardless of the fact that the "purpose of introducing the cotton . . . was to change the classification of the goods." Of particular relevance here, the Court in *Magone* had occasion to address an evidentiary objection by the importer to the Government's attempt to introduce evidence that the importer sold the imported garments as "all wool" garments.

Specifically, the importer objected to a question put to a witness "as to whether the goods were bought and sold in this country as all-wool garments" on the ground that it was "irrelevant" to classification. The Circuit Court sustained the objection, and the United States raised the issue on appeal. The Supreme Court held that such evidence was "properly excluded." *Id.* at 614; *see also Hawaiian Motor Co. v. United States*, 473 F. Supp. 787, 788 (Cust. Ct. 1979) (evidence of the actual use intended by the importer as "irrelevant on the issue of chief use, and cannot properly be considered by the court in connection with classification of the imported merchandise").

In *United States v. Schoverling*, 146 U.S. 76 (1892), the importer brought an action in the U.S. Circuit Court for the Southern District of New York to recover an alleged excess of duties, paid under protest, on entries of finished gunstocks with locks and mouldings that the importer had classified as "manufactures composed wholly or in part of metal" and the collector reclassified as "shotguns" based on the actual use intended by the importer (to assemble the gunstocks with separately-imported barrels to make shotguns). The Circuit Court ruled for the importer. The United States appealed to the Supreme Court on the ground "that the transaction, as conducted, was a fraud upon the statute."

The Court disagreed, citing *Merritt* for the proposition that "the intent of the importers to put the gunstocks with barrels separately imported . . . [could] not affect the rate of duty on the

gunstocks as a separate importation," and citing *Worthington* for the proposition that "the dutiable classification of the gunstocks must be ascertained by an examination of them in the condition in which they are imported." *Id.* at 81.

The next and last time the Supreme Court addressed the subject was in *United States v. Citroen*, 223 U.S. 407 (1912). At issue was a collection of 37 drilled pearls that the importer had collected and made into a necklace, but unstrung before importation, and entered as "pearls in their natural state, not set or strung." The collector reclassified the merchandise as "pearls, set or strung" based on the fact that the importer had unstrung the pearls prior to importation solely to avoid the duty assigned to that classification. The importer paid the assessment under protest and sought judicial review. The lower courts divided, and the Supreme Court granted certiorari to reaffirm what it called the "well established" doctrine that:

> in order to produce uniformity in the imposition of duties, the . . . classification of articles imported must be ascertained by an examination of the imported article itself, in the condition in which it is imported. . . . So long as no deception is practiced, so long as the goods are truly invoiced and freely and honestly exposed to the officers of customs for their examination, no fraud is committed, no penalty is incurred. ***The inquiry must be — Does the article, as imported, fall within the description sought to be applied?***

*Citroen*, 223 U.S. at 414 (citing *Merritt* and *Worthington*) (emphasis added; internal quotation marks omitted). Applying these principles to the case before it, the Court sustained the importer's classification and said the following:

> . . . Congress expressly defined what pearls were to be included [in the paragraph for jewelry]. The paragraph reads, "including . . . pearls set or strung." It does not say pearls that can be strung, or that are assorted or matched so as to be suitable for a necklace, but pearls "set or strung." ***We are not concerned with the reason for the distinction; it is enough that Congress made it.*** Had these pearls never been strung before importation, no one would be heard to argue that they fell directly within the description of paragraph 434 . . . .

*Id.* at 415 (emphasis added).

In the decades since *Citroen*, the lower courts have faithfully applied its teachings. *See, e.g., Michaelian & Kohlberg, Inc. v. United States*, 22 C.C.P.A. 551, 557 (1935) ("the rule is well settled, having been often stated and approved by various courts, that an importer has the right to fashion his merchandise so that it shall be assessed with duty at the lowest rate"); *see also Tropicana Prods., Inc. v. United States*, 789 F. Supp. 1154 (Ct. Int'l Trade 1992) (same; using the term "fundamental right").

In *Michaelian & Kohlberg*, the Court of Customs and Patent Appeals rejected the government's position that an importer could not crudely embroidered a dragon on rugs to bring them within a favorable provision for "embroidered articles," even though the importer intended the buyer to remove the embroidery after importation. The court held likewise in *Varsity Watch Co. v. United States*, 34 C.C.P.A. 155, 163 (1947), rejecting the government's position that an importer could not coat base metal watch cases with an ultra-thin layer of gold solely to bring them within a favorable provision for watch cases made in part of gold.

Similarly, in *Mercantile Stores Co. v. United States*, 36 Cust. Ct. 354, 355 (1956), the Customs Court rejected the government's position that an importer could not loosely sew a lace border to sheets of cloth, to bring them within a favorable provision for articles made in part of lace, even though the importer removed the lace after importation.

The only recognized exception to the *Merritt-Worthington* doctrine has been in cases involving the use of additives to change the classification of liquids. Specifically, the Supreme Court has held that the addition of sulphuric acid to nitric acid did not change the classification of the nitric acid to a mixture of acids where the sulphuric acid was merely packing material to prevent the corrosion of tank cars during shipment and had to be removed before the

merchandise could be put to *any* recognized commercial use.[4] The lower courts have extended this principle to sugar syrups, holding that the addition of water and formaldehyde,[5] corn syrup,[6] or molasses[7] did not affect classification when the additive had to be removed before the merchandise could be put to any recognized commercial use.

None of the just-cited cases bears even a remote resemblance to this case. NWFP has provided irrefragable proof that edge-glued cedar lumber in the dimensions and lengths specified in the complaint have a multiplicity of recognized commercial uses. *See* Compl. Exs. 4-6. Moreover, unlike putting additives in liquids, edge-gluing lumber involves a substantial and costly manufacturing process,[8] and the process cannot be readily reversed (the lumber is actually stronger at the glue line). *See id.* Ex. 3. The samples filed with the Court and pictured in the complaint make clear beyond any peradventure of doubt that the subject edge-glued lumber is the genuine article and not a mere imitation. Thus, the tariff classification of NWFP's imports must be determined solely by an examination of the merchandise in its condition as imported, and it does not matter what NWFP did with the merchandise after importation. Any facts relating post-importation events, or NWFP's intentions in that regard, are irrelevant and must be excluded from this proceeding.

---

[4] *United States v. Aetna Explosives Co.*, 256 U.S. 402 (1920), *aff'g* 9 C.C.A. 298, 306 (1919).

[5] *Savannah Sugar Ref'g Corp. v. United States*, 20 C.C.P.A. 272, 278 (1932).

[6] *Arbor Foods, Inc. v. United States*, 9 C.I.T. 119 (1985).

[7] *Heartland By-Products, Inc. v. United States*, 264 F.3d 1126 (Fed. Cir. 2001), *cert. denied*, 537 U.S. 812 (2002).

[8] It is because of this high cost that edge-glued wood is expressly excluded from the AD/CV duties on Canadian softwood lumber. *See* Compl. Ex. 7. Edge-glued lumber does not compete with, or travel in the same channels of trade as, regular lumber. It is in an entirely different "class or kind" of merchandise.

## III. CONCLUSION

For more than 160 years, the government has been charging importers with "fraud" for designing around unfavorable tariff provisions, and the courts have been saying the law is otherwise and summarily dismissing the charges. This case is just the latest dance in this never-ending legal two-step. The only relevant inquiry in this case is whether "the article, as imported, fall within the description sought to be applied?" *Citroen*, 223 U.S. at 414. Accordingly, like the courts in *Magone* and *Hawaiian Motors*, this Court should preclude any inquiry into the actual use of the subject importations and exclude any evidence or argument relating to the same.

Respectfully submitted,

Date: November 25, 2003

s/Andrew Woodson Stuart_____________
Andrew Woodson Stuart, Esq.
2315 Wisconsin Avenue, NW
Second Floor
Washington, D.C. 20007
Tel: (202) 279-3196
Fax: (202) 338-0270

*Attorney for Plaintiff Northwest Forest Products*

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FOREST PRODUCTS NORTHWEST, INCORPORATED, *Plaintiff,* | ) | |
| *v.* | ) | Case No. 03-2485C<br>The Honorable Susan G. Braden, J. |
| UNITED STATES, *Defendant.* | ) | |

## ORDER

UPON CONSIDERATION of the motion *in limine* filed by the Plaintiff, Forest Products Northwest, and the opposition thereto filed by the Defendant, the United States, the matter having come before the Court for a hearing, now, after due deliberation, it is hereby ORDERED and ADJUDGED that said motion be, and hereby is, GRANTED.

And it is FURTHER ORDERED that, for the reasons stated in said motion, the Defendant shall not present any argument or evidence, or seek discovery, regarding the post-importation processing of the subject merchandise or the form or condition of the merchandise after such processing.

It is SO ORDERED.

Date: _________________

_______________________
The Honorable Susan G. Braden, J.

**Copies to:**

A. Woodson Stuart, Esq.
2315 Wisconsin Avenue, NW
Second Floor
Washington, D.C. 20007-1866
*Attorney for Plaintiff Forest Products Northwest, Inc.*

Claudia Burke, Esq.
Commercial Litigation Branch
U.S. Department of Justice
Washington, D.C. 20530
**Attn: Classification Unit**
**8th Floor, 11 L Street, NW**
*Attorney for Plaintiff United States*