Exhibit 1 to Pl. NWFP's Mot. for Exped. Consid.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JUDITH M. BARZILAY, JUDGE

AMERICAN BAYRIDGE CORP., :

Plaintiff, : Court No. 98-08-02682

v. :

UNITED STATES OF AMERICA, :

Defendant. :

**MEMORANDUM IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

FRANK W. HUNGER
Assistant Attorney General

JOSEPH I. LIEBMAN
Attorney in Charge
International Trade Field Office

BARBARA S. WILLIAMS
AIMEE LEE
Civil Division, Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza
New York, New York 10278
Attorneys for Defendant
Tel. No. (212) 264-9230 or 9240

Of counsel:
Allan Martin
Associate Chief Counsel
Louis Brenner, Jr.
General Attorney
U.S. Customs Service

Exhibit 1 to Pl. NWFP's Mot. for Exped. Consid.

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: JUDITH M. BARZILAY, JUDGE

| | | |
|---|---|---|
| AMERICAN BAYRIDGE CORP., | : | |
| Plaintiff, | : | Court No. 98-08-02682 |
| v. | : | |
| UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS**

Rule 56(i), Rules of the United States Court of International Trade, requires that motions for summary judgment include a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried. In this case, there are no material facts as to which there exists a genuine issue to be tried and the issues are amenable to resolution through dispositive motions. The pertinent undisputed facts of this case are as follows:

1. The imported lumber in this action is 2 x 6 kiln-dried, grade No. 3 (or grade "stud") lumber with eased edges and 1 inch holes drilled in the center of the boards, 16 inches from each end. Complaint.

2. The United States and Canada entered into a Memorandum of Understanding ("MoU") in 1986, pursuant to which Canada imposed a 15 percent export charge on certain softwood lumber products. Attachment to 17 our memorandum in support of our cross-motion for summary judgment, and in opposition to plaintiff's motion for summary judgment ("our memorandum").

7. In response, Customs issued New York Ruling B81564 to North Star Wholesale Lumber ("North Star's NY Ruling B81564"), an unpublished ruling, on February 18, 1997, which provided that North Star's drilled boards would be classifiable under HTSUS subheading 4418.90. North Star's NY Ruling B81564, Exhibit 1 to plaintiff's motion.

8. On October 27, 1997, Customs published in the Federal Register a "Solicitation of Comments Regarding the Commercial Uses of Wood Studs with Drilled Holes." 62 Fed. Reg. 55,667, 55,668. Customs reiterated in the Federal Register notice that there should be no reliance by third parties upon North Star's NY Ruling B81564, and that claims for detrimental reliance would not be entertained. Attachment 18 to our memorandum.

9. On April 15, 1998, Customs published in the Customs Bulletin a "Proposed Revocation of Ruling Letter Relating to Tariff Classification of Drilled Softwood Studs," which notified all interested parties that Customs intended to revoke North Star's NY Ruling B81564. Customs Bulletin and Decisions, Vol. 32, No. 15 (Apr. 15, 1998). In that document, Customs stated that it intended to revoke North Star's NY Ruling B81564, pursuant to 19 U.S.C. § 1625(c)(1). Attachment 19 to our memorandum.

10. Plaintiffs in the action entitled National Lumber and Building Material Dealers Associations v. United States, Court No. 98-06-02426, filed a complaint and application for temporary restraining order and preliminary injunction in that action before the Court of International Trade on June 30, 1998.

11. National Lumber and Building Material Dealers Associations v. United States, Court No. 98-06-02426, was dismissed pursuant to the Stipulated Procedures: Dismissal Court No. 98-06-02424 and Order of Dismissal, entered July 16, 1998. The Stipulated Procedures

contained, in part, terms that defendant would expedite the administrative and judicial review of the liquidation of American Bayridge Corp.'s ("Bayridge") imported lumber, and Bayridge's concession to submit all evidence and theories it intended to raise in this action to Customs during the administrative process. Bayridge ratified the stipulation by providing a separate letter of its assent to the stipulated terms. Exhibit 8 to the complaint.

12. Customs issued Headquarters Ruling Letter ("HQ") 961555 on July 1, 1998. HQ 961555, attached as Exhibit 2 to plaintiff's motion for summary judgment.

13. After Bayridge entered the imported lumber here, and Customs timely liquidated it, as required by the stipulation, in response to Bayridge's request in the protest for further review, Customs conducted a further review of the protest in the expedited fashion set forth in the Stipulated Procedures: Dismissal Court No. 98-06-02424 and Order of Dismissal. Exhibit 8 to the complaint.

14. Bayridge did not present any additional evidence or arguments to Customs other than incorporating by reference those addressed in the two previous notice and comment proceedings. Protest, attached as Exhibit 2 to plaintiff's motion for summary judgment.

15. Customs issued its decision on the application for further review in HQ 962042. The protest was then denied. HQ 962042, Exhibit 9 to the complaint, and protest, attached as Exhibit 2 to plaintiff's motion for summary judgment.

16. Lumber identical to the imported merchandise, except for the presence of the drilled holes is classifiable as "wood" under 4407. Bayridge's memorandum in support of its motion for summary judgment at 1, 26-27.

*U.S. Code as of: 01/22/02*

## Section 1515. Review of protests

Related Res

International T Guide

Export Controls

International La and Docur

Internationa Discuss

(a) Administrative review and modification of decisions

Unless a request for an accelerated disposition of a protest is filed in accordance with subsection (b) of this section the appropriate customs officer, within two years from the date a protest was filed in accordance with section 1514 of this title, shall review the protest and shall allow or deny such protest in whole or in part. Thereafter, any duties, charge, or exaction found to have been assessed or collected in excess shall be remitted or refunded and any drawback found due shall be paid. Upon the request of the protesting party, filed within the time allowed for the filing of a protest under section 1514 of this title, a protest may be subject to further review by another appropriate customs officer, under the circumstances and in the form and manner that may be prescribed by the Secretary in regulations, but subject to the two-year limitation prescribed in the first sentence of this subsection. Within 30 days from the date an application for further review is filed, the appropriate customs officer shall allow or deny the application and, if allowed, the protest shall be forwarded to the customs officer who will be conducting the further review. Notice of the denial of any protest shall be mailed in the form and manner prescribed by the Secretary. Such notice shall include a statement of the reasons for the denial, as well as a statement informing the protesting party of his right to file a civil action contesting the denial of a protest under section 1514 of this title.

(b) Request for accelerated disposition of protest

A request for accelerated disposition of a protest filed in accordance with section 1514 of this title may be mailed by certified or registered mail to the appropriate customs officer any time after ninety days following the filing of such protest. For purposes of section 1581 of title 28, a protest which has not been allowed or denied in whole or in part within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request.

(c) Request for set aside of denial of further review

If a protesting party believes that an application for further review was erroneously or improperly denied or was denied without authority for such action, it may file with the Commissioner of Customs a written request that the denial of the application for further review be set aside. Such request must be filed within 60

days after the date of the notice of the denial. The Commissioner of Customs may review such request and, based solely on the information before the Customs Service at the time the application for further review was denied, may set aside the denial of the application for further review and void the denial of protest, if appropriate. If the Commissioner of Customs fails to act within 60 days after the date of the request, the request shall be considered denied. All denials of protests are effective from the date of original denial for purposes of section 2636 of title 28. If an action is commenced in the Court of International Trade that arises out of a protest or an application for further review, all administrative action pertaining to such protest or application shall terminate and any administrative action taken subsequent to the commencement of the action is null and void.

(d) Voiding denial of protest

If a protest is timely and properly filed, but is denied contrary to proper instructions, the Customs Service may on its own initiative, or pursuant to a written request by the protesting party filed with the appropriate port director within 90 days after the date of the protest denial, void the denial of the protest.

**Previous** **[Notes]** **Next**

**Laws: Cases and Codes : U.S. Code : Title 19 : Section 1625**

Search Title 19

- United States Code
  - TITLE 19 - CUSTOMS DUTIES
    - CHAPTER 4 - TARIFF ACT OF 1930
      - SUBTITLE III - ADMINISTRATIVE PROVISIONS
        - PART V - ENFORCEMENT PROVISIONS

*U.S. Code as of: 01/22/02*

## Section 1625. Interpretive rulings and decisions; public information

Related Res

International T Guide

Export Controls

International La and Docur

Internationa Discuss

```
(a) Publication
  Within 90 days after the date of issuance of any interpretive
ruling (including any ruling letter, or internal advice memorandum)
or protest review decision under this chapter with respect to any
customs transaction, the Secretary shall have such ruling or
decision published in the Customs Bulletin or shall otherwise make
such ruling or decision available for public inspection.
(b) Appeals
  A person may appeal an adverse interpretive ruling and any
interpretation of any regulation prescribed to implement such
ruling to a higher level of authority within the Customs Service
for de novo review.  Upon a reasonable showing of business
necessity, any such appeal shall be considered and decided no later
than 60 days following the date on which the appeal is filed.  The
Secretary shall issue regulations to implement this subsection.
(c) Modification and revocation
  A proposed interpretive ruling or decision which would -
    (1) modify (other than to correct a clerical error) or revoke a
  prior interpretive ruling or decision which has been in effect
  for at least 60 days; or
    (2) have the effect of modifying the treatment previously
  accorded by the Customs Service to substantially identical
  transactions;
shall be published in the Customs Bulletin. The Secretary shall
give interested parties an opportunity to submit, during not less
than the 30-day period after the date of such publication, comments
on the correctness of the proposed ruling or decision.  After
consideration of any comments received, the Secretary shall publish
a final ruling or decision in the Customs Bulletin within 30 days
after the closing of the comment period.  The final ruling or
decision shall become effective 60 days after the date of its
publication.
(d) Publication of customs decisions that limit court decisions
  A decision that proposes to limit the application of a court
decision shall be published in the Customs Bulletin together with
notice of opportunity for public comment thereon prior to a final
decision.
(e) Public information
  The Secretary may make available in writing or through electronic
media, in an efficient, comprehensive and timely manner, all
information, including directives, memoranda, electronic messages
```

and telexes which contain instructions, requirements, methods or advice necessary for importers and exporters to comply with the Customs (FOOTNOTE 1) laws and regulations. All information which may be made available pursuant to this subsection shall be subject to any exemption from disclosure provided by section 552 of title 5.

(FOOTNOTE 1) So in original. Probably should not be capitalized.

Previous [Notes] Next

*U.S. Code as of: 01/22/02*

**Section 1671f. Treatment of difference between deposit of estimated countervailing duty and final assessed duty under countervailing duty orders**

Related Res

International T
Guide

Export Controls

International La
and Docur

Internationa
Discuss

(a) Deposit of estimated countervailing duty under section 1671b(d)(1)(B) of this title

If the amount of a cash deposit, or the amount of any bond or other security, required as security for an estimated countervailing duty under section 1671b(d)(1)(B) of this title is different from the amount of the countervailing duty determined under a countervailing duty order issued under section 1671e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption before notice of the affirmative determination of the Commission under section 1671d(b) of this title is published shall be -

(1) disregarded, to the extent that the cash deposit, bond, or other security is lower than the duty under the order, or

(2) refunded or released, to the extent that the cash deposit, bond, or other security is higher than the duty under the order.

(b) Deposit of estimated countervailing duty under section 1671e(a)(3) of this title

If the amount of an estimated countervailing duty deposited under section 1671e(a)(3) of this title is different from the amount of the countervailing duty determined under a countervailing duty order issued under section 1671e of this title, then the difference for entries of merchandise entered, or withdrawn from warehouse, for consumption after notice of the affirmative determination of the Commission under section 1671d(b) of this title is published shall be -

(1) collected, to the extent that the deposit under section 1671e(a)(3) of this title is lower than the duty determined under the order, or

(2) refunded, to the extent that the deposit under section 1671e(a)(3) of this title is higher than the duty determined under the order,

together with interest as provided by section 1677g of this title.

Previous [Notes] Next

*U.S. Code as of: 01/22/02*

## Section 1673g. Conditional payment of antidumping duty

**Related Res**

International T Guide

Export Controls

International La and Docur

Internationa Discuss

(a) General rule
  For all entries, or withdrawals from warehouse, for consumption of merchandise subject to an antidumping duty order on or after the date of publication of such order, no customs officer may deliver merchandise of that class or kind to the person by whom or for whose account it was imported unless that person complies with the requirements of subsection (b) of this section and deposits with the appropriate customs officer an estimated antidumping duty in an amount determined by the administering authority.

(b) Importer requirements
  In order to meet the requirements of this subsection, a person shall -

(1) furnish, or arrange to have furnished, to the appropriate customs officer such information as the administering authority deems necessary for determining the export price (or the constructed export price) of the merchandise imported by or for the account of that person, and such other information as the administering authority deems necessary for ascertaining any antidumping duty to be imposed under this subtitle;

(2) maintain and furnish to the customs officer such records concerning the sale of the merchandise as the administering authority, by regulation, requires;

(3) state under oath before the customs officer that he is not an exporter, or if he is an exporter, declare under oath at the time of entry the constructed export price of the merchandise to the customs officer if it is then known, or, if not, so declare within 30 days after the merchandise has been sold, or has been made the subject of an agreement to be sold, in the United States; and

(4) pay, or agree to pay on demand, to the customs officer the amount of antidumping duty imposed under section 1673 of this title on that merchandise.

**Previous** **[Notes]** **Next**

*U.S. Code as of: 01/22/02*

## Section 1581. Civil actions against the United States and agencies and officers thereof

Related Res

Judiciary Leg

Litigation Leg

U.S. Legal S
Summa

Judiciary Dis

(a) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part, under section 515 of the Tariff Act of 1930.

(b) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516 of the Tariff Act of 1930.

(c) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930.

(d) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review -

(1) any final determination of the Secretary of Labor under section 223 of the Trade Act of 1974 with respect to the eligibility of workers for adjustment assistance under such Act;

(2) any final determination of the Secretary of Commerce under section 251 of the Trade Act of 1974 with respect to the eligibility of a firm for adjustment assistance under such Act; and

(3) any final determination of the Secretary of Commerce under section 271 of the Trade Act of 1974 with respect to the eligibility of a community for adjustment assistance under such Act.

(e) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review any final determination of the Secretary of the Treasury under section 305(b)(1) of the Trade Agreements Act of 1979.

(f) The Court of International Trade shall have exclusive jurisdiction of any civil action involving an application for an order directing the administering authority or the International Trade Commission to make confidential information available under section 777(c)(2) of the Tariff Act of 1930.

(g) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review -

(1) any decision of the Secretary of the Treasury to deny a customs broker's license under section 641(b)(2) or (3) of the Tariff Act of 1930, or to deny a customs broker's permit under section 641(c)(1) of such Act, or to revoke a license or permit under section 641(b)(5) or (c)(2) of such Act;

(2) any decision of the Secretary of the Treasury to revoke or suspend a customs broker's license or permit, or impose a

monetary penalty in lieu thereof, under section 641(d)(2)(B) of the Tariff Act of 1930; and

(3) any decision or order of the Customs Service to deny, suspend, or revoke accreditation of a private laboratory under section 499(b) of the Tariff Act of 1930.

(h) The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to review, prior to the importation of the goods involved, a ruling issued by the Secretary of the Treasury, or a refusal to issue or change such a ruling, relating to classification, valuation, rate of duty, marking, restricted merchandise, entry requirements, drawbacks, vessel repairs, or similar matters, but only if the party commencing the civil action demonstrates to the court that he would be irreparably harmed unless given an opportunity to obtain judicial review prior to such importation.

(i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for -

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable either by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 or by a binational panel under article 1904 of the North American Free Trade Agreement or the United States-Canada Free-Trade Agreement and section 516A(g) of the Tariff Act of 1930.

(j) The Court of International Trade shall not have jurisdiction of any civil action arising under section 305 of the Tariff Act of 1930.

[Notes] Next

**Laws: Cases and Codes : U.S. Code : Title 28 : Section 1657**

Search Title 28

- United States Code
  - TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
    - PART V - PROCEDURE
      - CHAPTER 111 - GENERAL PROVISIONS

*U.S. Code as of: 01/22/02*

**Section 1657. Priority of civil actions**

(a) Notwithstanding any other provision of law, each court of the United States shall determine the order in which civil actions are heard and determined, except that the court shall expedite the consideration of any action brought under chapter 153 or section 1826 of this title, any action for temporary or preliminary injunctive relief, or any other action if good cause therefor is shown. For purposes of this subsection, ''good cause'' is shown if a right under the Constitution of the United States or a Federal Statute (including rights under section 552 of title 5) would be maintained in a factual context that indicates that a request for expedited consideration has merit.

(b) The Judicial Conference of the United States may modify the rules adopted by the courts to determine the order in which civil actions are heard and determined, in order to establish consistency among the judicial circuits.

**Related Res**

Judiciary Leg

Litigation Leg

U.S. Legal S Summa

Judiciary Dis

**Previous** **[Notes]** **Next**