# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| FOREST PRODUCTS NORTHWEST, INC., *Plaintiff,* v. UNITED STATES, *Defendant.* | Case No. 03-2485C<br>The Honorable Susan G. Braden, J. |

## EXPERT REPORT AND DECLARATION OF KENNETH G. WEIGEL, ESQ.

COMES NOW Kenneth G. Weigel, Esq., and hereby respectfully submits this expert report and declaration in support of the Motion for Summary Judgment filed by Plaintiff Forest Products Northwest, Inc., doing business as Northwest Forest Products ("NWFP"), and states as follows:

1. My name is Kenneth G. Weigel, Esq., and I am a partner and co-leader of the Interntaional Trade and Regulatory Group at the law firm of ALSTON & BIRD, LLP, 601 Pennsylvania Avenue, NW, North Building, 10th Floor, Washington, DC 20004-2601, Phone: 202-756-3431, Fax: 202-756-3333.
2. I was asked by NWFP to provide an expert opinion regarding the tariff classification of the edge-glued lumber at issue in the captioned matter.
3. The opinion stated herein is based on NWFP's Proposed Findings of Uncontroverted Fact.

4. My general qualifications to formulate such an opinion are described in the résumé and *curriculum vitae* attached hereto as Exhibit A.

5. In addition to my general qualifications and experience in customs law and administration, I began focusing heavily on lumber classification in 1997 as counsel for the National Lumber and Building Material Dealers Association and National Association of Home Builders in the predrilled studs case (*American Bayridge*), which has been discussed extensively in NWFP's briefing in this case.

6. In the years since the predrilled studs case, I have represented clients in proceedings by the U.S. Customs Service, now the Bureau of Customs and Border Protection (Customs) to reclassify other remanufactured lumber products under Heading 4407, HTSUS, including notched studs, rough headed lumber, truss components, unassembled home kits, I-joist beams, and stair rails.

7. Over the course of these representations, I developed an in-depth knowledge of: (a) the process of manufacturing and remanufacturing lumber; (b) the technical definition of "lumber" in the trade; and (c) the legal definition of "lumber" in Customs Rulings and court decisions, including the rulings and court decisions set forth in NWFP's Motion for Summary Judgment.

8. Lumber is a general purpose building material that is defined in the trade as the product of a saw mill not further manufactured than by lengthwise sawing, resawing, surfacing (*i.e.*, planing or sanding), certain continuous shaping (*e.g.*, tonguing and grooving), and cross-cutting or end-jointing to change the length of the lumber. *See, e.g.*, Random Lengths Publications, Terms of the Trade 205 (4th ed. 2000) (Lumber is "timber sawed into standardized structural members, as boards or planks"; a "wood product

manufactured from logs by sawing, resawing and, usually, planing, with all four sides sawn.").

9. The industry definition of "lumber" is consistent with, but generally more precise than, the definitions provided in standard dictionaries. *See* American Heritage Dictionary of the English Language (4th ed. 2000) (defining "lumber" as "[t]imber sawed into boards, planks, or other structural members of standard or specified length"); Webster's New Riverside University Dictionary 708 (2nd ed. 1988) (defining "lumber" as "timber sawed into standardized structural members, as boards or planks").

10. The industry definition of "lumber" is also consistent with the legal definition of the term adopted by courts in customs classification cases going back nearly 150 years, as set forth in Plaintiff's Motrion for Summary Judgenment at 11-12.

11. The tariff heading, Heading 4407, HTSUS, traditionally considered a lumber heading describes the material within its scope as "Wood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or end-jointed, of a thickness exceeding 6 mm: . . . ." No other processes are described, and there is no indication that wood which has undergone other processes may be classified in this provision.

12. Also, Heading 4409, HTSUS provides for "Wood (including strips and friezes for parquet flooring, not assembled) continuously shaped (tongued, grooved, rebated, chamfered, V-jointed, beaded, molded, rounded or the like) along any of its edges, ends or faces, whether or not planed, sanded or end-jointed: . . . ." Some of the products in this heading could be considered lumber.

13. I understand that the merchandise at issue here consists of solid pieces of rough dimension lumber that have been joined together by applying glue along the edges and pressing the lumber together until the glue dries using a mechanical press.

14. This manufacturing process is called "laminating," and the resulting product is referred to as a "laminate." *See* Random Lengths Publications, Terms of the Trade 192-93 (4th ed. 2000) ("Laminate" means "to bond together two or more pieces of wood to make a single piece, using adhesive and pressure")

15. "Lumber" and "laminates" are considered distinct articles in the trade.

16. I understand that the specific products at issue here consist of cedar laminates in lengths of 8 to 20 feet with the following nominal dimensions:

a. 1 ¼ inches by 8 inches.
b. 1 ¼ inches by 12 inches.
c. 1 ¼ inches by 16 inches.
d. 1 ¼ inches by 20 inches.
e. 1 ¼ inches by 24 inches.

---

f. 1 ¾ inches by 8 inches.
g. 1 ¾ inches by 12 inches.
h. 1 ¾ inches by 16 inches.
i. 1 ¾ inches by 20 inches.
j. 1 ¾ inches by 24 inches.

---

k. 2 inches by 8 inches.

*l*. 2 inches by 12 inches.

m. 2 inches by 16 inches.

n. 2 inches by 20 inches.

o. 2 inches by 24 inches.

---

p. 4 inches by 8 inches.

17. As can be seen, the widths of the imported merchandise are not typical of lumber and are achieved by combining multiple pieces of lumber together to form a wood laminate or panel.

18. Laminating (*e.g.*, edge gluing) is not among the manufacturing processes within the definition of "lumber" in the trade or in the law.

19. Considering the tariff definition laminated wood is "more than" mere "lumber."

20. Laminating is a certainly as substantial and expensive a manufacturing process as those relatively minor cutting and shaping processes beyond the planing stage that historically have been regarded as sufficient to shift the tariff classification of the input "wood" into an "article of wood." Multiple pieces of lumber are combined into a new, wider wood product or article of wood.

21. Consequently, I believe that the lamination of the lumber before importation moves it from the category of "wood" (Headings 4401 to 4413, HTSUS) to the category of manufactured "articles of wood" (Headings 4414 to 4420, HTSUS).

22. Because there is no special provision for laminated wood in Heading 4414 to Heading 4420, HTSUS, the subject imports must be classified under the "basket provision" for "Other articles of wood," Heading 4421, HTSUS.