IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FOREST PRODUCTS NORTHWEST, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2485 |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DECLARATION BY PAUL GARRETTO

I, Paul Garretto, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. I am currently the National Import Specialist (NIS) for wood products with the United States Customs and Border Protection, Department of Homeland Security (Customs). I have been in this position since 1976.

2. As the NIS for wood products, I have a national responsibility for all functions relative to the classification and appraisement of imported merchandise provided for under Chapter 44, HTSUS. I issue binding rulings to the importing community involving tariff classification, marking, origin, NAFTA, and special trade programs. I provide technical advice, guidance, and expert commodity-specific information to field Import Specialists, a variety of other Customs offices and other government agencies, e.g., International Trade Commission, Department of Commerce, the United States Trade Representative, and the Department of Agriculture. Finally, I provide assistance to the Department of Justice in civil actions involving the classification of imported goods.

3. As part of my responsibilities, I am familiar with the history and practices in forestry, logging, primary and secondary manufacturing, marketing, construction, and related wood fields.

4. I am familiar with the above-referred civil action, <u>Forest Products Northwest, Inc. v. United States</u>, Ct. No. 03-2485, and I have participated in its preparation. Thus, I am familiar with the subject merchandise and the issues of the case.

5. I have had the opportunity to review the subject merchandise of Forest Products Northwest, Inc. (FPN). I have found that the imported merchandise is composed of two wood boards "sloppily" glued together edge-to-edge. Each board is rough and green and in sizes such as 7/4 x 12, 2-3/16 x 4, 4 x 4, 3-11/16 x 4 and others. This is not an appropriate and industry recognized method to manufacture edge-glued wood.

6. In the trade, edge-glued wood is manufactured with narrow wood boards that first have been kiln dried, planed, and sawn to various sizes with the intent of eliminating defects. The prepared narrow boards are then accurately edge-glued and properly color matched. The assembled, edge-glued, board is then planed/sanded. The result is wider wood boards, of a higher quality, ready to be used in the manufacture of furniture, shelves, etc.

7. After importation, FPN's temporarily glued boards are ripped along the glue line to obtain the original lumber boards.

8. According to regular practice in the trade, edge-glued boards are not, under any reasonable circumstances, ripped along the glue lines to reproduce the original narrow boards. It would not serve any commercial purpose to do so.

9. During a visit to Forest Products Northwest, Inc. by Agent Randy Don Kivlighn, the importer stated that the edge-glued wood in question was ripped along the glue-line and later used to produce posts and other goods. In addition, Agent Kivlighn observed that some of the

edge-glued lumber had split apart during shipment. (This is a consequence of the temporary gluing process on green and rough lumber).

10. On September 30, 2003, A. Woodson Stuart, Esq. requested a tariff classification ruling on behalf of Forest Products Northwest. Samples and information submitted to Customs in connection with the ruling request covered the same merchandise at issue in this court action. The samples clearly demonstrated the poor quality and temporary nature of the gluing process. The ruling request was withdrawn by Mr. Stuart on October 17, 2003.

11. Official samples of the subject merchandise were obtained at the time of entry by the Customs Inspector at Port of Sumas, WA. These samples are in the custody of Customs at the Port of Blaine, WA.

12. The condition of the glue line and the fact that the individual boards were green and rough (edges not planed or sanded) clearly indicate that, in condition as imported, the merchandise in question has been processed to create an artifice designed to avoid the payment of AD/CVD.

13. The edge-glued wood imported by NFP is not a commercially viable product, and it is not an intermediate product. It is sawn wood temporarily glued for shipping to the U.S. and disguising it for Customs purposes to avoid the payment of antidumping and countervailing duties.

I have read the foregoing three page declaration and I certify under penalty of perjury that it is true and correct.

s/ Paul Garretto

PAUL GARRETTO
Import Specialist
United States Customs and Border Patrol

Executed this 27th day of February 2004