LexisNexis™ by Credit Card

Home | LexisNexis™ by Credit Card | Bookstore | Products & Services | Sign Off

View: Full | Cite | KWIC    Documents Purchased | New Search    View in Printable Form

Your browser settings may prevent your return to this document. Please print or download this document before selecting another.

**Document Links:**

Start of Document
DISPOSITION:
CASE SUMMARY
PROCEDURAL POSTURE:
OVERVIEW:
OUTCOME:
CORE TERMS:
LexisNexis (TM) HEADNOTES - Core Concepts -
COUNSEL:
JUDGES:
OPINIONBY:
OPINION:

SHEPARD'S®

*104 F. Supp. 2d 30, *; 2000 U.S. Dist. LEXIS 8913, ***

LINDA R. TRIPP, Plaintiff, v. EXECUTIVE OFFICE OF THE PRESIDENT, et al., Defendants.

Civ. No. 99-2554 (RCL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

104 F. Supp. 2d 30; 2000 U.S. Dist. LEXIS 8913

June 14, 2000, Decided

**DISPOSITION:** [**1] Defendant Kenneth H. Bacon's Motion to Recuse DENIED.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendant Assistant Secretary of Defense for Public Affairs moved for recusal, pursuant to 28 U.S.C.S. § 455(a) & (b)(1), in a case arising from the release of information from a security clearance application to a reporter.

**OVERVIEW:** The case arose out of the release of information from a security clearance application by the Department of Defense to a reporter. The court had issued an opinion in a related case, commonly referred to as "Filegate," in which the court authorized limited discovery into the circumstances surrounding the release of the background security information. Defendant Assistant Secretary of Defense for Public Affairs contended that recusal was required because the court had "directly and unnecessarily ruled on one of the principal issues presented in this case-whether the defendants' conduct violated the Privacy Act--without the benefit of any briefing, argument, or evidence on that question." However, defendant failed to demonstrate either the existence of personal prejudice derived from an extrajudicial source or the appearance of prejudice based on an extrajudicial source. Nor, having failed to show bias derived from an extrajudicial source, did the defendant demonstrate that the court possessed a deep-seated favoritism or antagonism that would make fair judgment impossible.

**OUTCOME:** Motion to recuse denied; defendant failed to demonstrate either the existence of personal prejudice derived from an extrajudicial source or the appearance of prejudice based on an extrajudicial source. Nor, having failed to show bias derived from an extrajudicial source, did the defendant demonstrate that the court possessed a deep-seated favoritism or antagonism that would make fair judgment impossible.

**CORE TERMS:** extrajudicial, in camera, law enforcement, recusal, Privacy Act, discovery, non-party, bias, declaration, appearance, referral, recuse, investigative, impartiality, antagonism, ongoing, ex parte, deep-seated, motion to compel, characterization, favoritism, partiality, observer, briefing, circumstantial evidence, motion to recuse, near future, completion, deposition, expressing

**LexisNexis (TM) HEADNOTES - Core Concepts -** Hide Concepts

Civil Procedure > Trials > Disqualification & Recusal

*HN1* 28 U.S.C.S. § 455(a) provides that a federal judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. And, 28 U.S.C.S. § 455(b)(1) states, in relevant part, that a judge shall disqualify himself where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. Whether there is any basis for questioning a judge's impartiality under 28 U.S.C.S. § 455(a) is to be determined by an objective standard. That is, recusal is required where the court determines that an informed observer would reasonably question the judge's impartiality. Similarly, by its terms, 28 U.S.C.S. § 455(b)(1) requires a demonstration of bias or prejudice derived from a "personal" or extrajudicial source.

Civil Procedure > Trials > Disqualification & Recusal

*HN2* To sustain its burden and compel recusal under 28 U.S.C.S. § 455(a), the moving party must demonstrate the court's reliance on an "extrajudicial source" that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, the movant must show a deep-seated favoritism or antagonism that would make fair judgment impossible. By contrast, 28 U.S.C.S. § 455(b)(1) requires the moving party to demonstrate actual bias or prejudice based upon an extrajudicial source.

Civil Procedure > Trials > Disqualification & Recusal

*HN3* Judges are presumed to be impartial. Thus, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion.

Civil Procedure > Trials > Disqualification & Recusal

*HN4* Opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make a fair judgment impossible. Indeed, the judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant but the judge is not thereby recusable for bias or prejudice since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings. Moreover, the objective appearance of an adverse disposition attributable to information acquired in a prior trial is not an objective appearance of personal bias or prejudice, and hence, not an objective appearance of improper partiality. Accordingly, opinions held by judges as a result of what they learned in earlier proceedings are not subject to deprecatory characterization as bias or prejudice.

Civil Procedure > Trials > Disqualification & Recusal

*HN5* Where materials are before the court in the course of fulfilling its judicial responsibilities, the court's exposure to these materials is not properly characterized as "extrajudicial."

Civil Procedure > Trials > Disqualification & Recusal

*HN6* There are pragmatic considerations underlying the assignment of related cases. Judges are presumed to be able to compartmentalize the information they receive and only rely on evidence relevant for a particular decision.

**COUNSEL:** For LINDA R. TRIPP, plaintiff: Stephen Martin Kohn, KOHN, KOHN & COLAPINTO, P.C., Washington, DC.

For EXECUTIVE OFFICE OF THE PRESIDENT, DEPARTMENT OF DEFENSE, federal defendants: Anne L. Weismann, U.S. DEPARTMENT OF JUSTICE, Washington, DC.

For KENNETH H. BACON, federal defendant: William James Murphy, MURPHY & SHAFFER, Baltimore, MD.

For CARA LESLIE ALEXANDER, intervenor: Larry Elliot Klayman, Paul J. Orfanedes, KLAYMAN & ASSOCIATES, PC, Washington, DC.

**JUDGES:** Royce C. Lamberth, United States District Judge.

**OPINIONBY:** Royce C. Lamberth

**OPINION:** [*31]

MEMORANDUM AND ORDER

(RECUSAL)

This matter comes before the court on defendant Kenneth H. Bacon's Motion to Recuse, pursuant to 28 U.S.C. § 455(a) & (b)(1) ("Section 455"). Upon consideration of the defendant's motion, the Department of Defense's response, plaintiff's opposition, the applicable law, and for the reasons set forth below, the court hereby DENIES defendant's motion to recuse.

I. BACKGROUND

This case arises from the release of information from Linda Tripp's security clearance application by the Department of Defense ("DoD") to Jane Mayer, [**2] a reporter from *The New Yorker* magazine. The allegations are as follows: On March 12, 1998, Mayer contacted Kenneth Bacon, the Assistant Secretary of Defense for Public Affairs, who was the principal DoD spokesman. Amended Compl. P 70. Mayer indicated she was writing a story on Tripp and had uncovered information suggesting that Tripp had been arrested in 1969. She wanted to know whether Tripp had disclosed any prior arrests on her security clearance application. *Id.* Following [*32] his call from Mayer, Bacon enlisted his deputy, Clifford Bernath to obtain the information she requested. The next day, after obtaining the desired information, Bernath contacted Mayer, with Bacon's approval, and informed her that Tripp had denied having an arrest record on her clearance application, a form also known as a "DD Form 398." *Id.* P 79. Later that same day, *The New Yorker* published Mayer's article, entitled "Portrait of a Whistleblower," which included the information from Tripp's Form 398 provided by DoD. *Id.* P 83.

Alleging that the release of information contained in the security clearance application violated her rights under the Privacy Act, 5 U.S.C. § 552a [**3] (1994), Tripp seeks damages and injunctive relief against the Executive Office of the President ("EOP"), the Federal Bureau of Investigation ("FBI") and the United States Department of Defense ("DoD"). *See id.* Counts I-III. Additionally, Tripp seeks recovery from certain named individual defendants, Kenneth Bacon, Clifford Bernath, and Jane and John Does 1-99, for an alleged conspiracy to violate Tripp's civil rights under the Civil Rights Act of 1871, 17 Stat. 13, cl. 2 and 42 U.S.C. § 1985(2). Tripp also brings pendent state common law claims against defendants Bacon and Bernath based on the torts of invasion of privacy and civil conspiracy.

The basis for the present motion, however, derives from an opinion issued by this court in a related case. *See Cara Alexander v. FBI, et al.*, 192 F.R.D. 37, 40 n.1 (D.D.C. March 6, 2000). Commonly referred to as "Filegate," the *Alexander* case involves allegations that plaintiffs' privacy interests were violated when, in 1993 to 1994, the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations. [**4] Over the course of discovery in *Alexander*, this court authorized limited discovery into the circumstances surrounding the release of Ms. Tripp's background security information, to the extent that the inquiry was "reasonably calculated to lead to the discovery of a White House connection to the release of Tripp's private government information." *See Alexander v. FBI, et al.*, Civ. Nos. 96-2123 & 97-1288, Memorandum and Order at 6-7 (D.D.C. April 13, 1998). Specifically, the court determined that discovery into the DoD release might be relevant if it could establish circumstantial evidence of White House misuse of government information, similar to the conduct alleged in Filegate. *See id.; see also Alexander v. FBI, et al.*, 186 F.R.D. 154, 158 (D.D.C. March 31, 1999)("This line of discovery is appropriate because plaintiffs may seek to create the inference that if the White House misused government information for political purposes in the case of the Tripp release, such evidence may be circumstantial evidence of the similar conduct alleged in plaintiffs' complaint.").

In pursuing discovery into the Tripp release in *Alexander*, plaintiffs subpoenaed various [**5] documents from DoD, including materials maintained in the DoD Inspector General's ("IG" or "OIG") investigatory file. *See* *Alexander*, 192 F.R.D. at 38-39. In response to plaintiffs' subpoenas and subsequent motions to compel, however, DoD claimed, *inter alia*, that certain of the materials requested by the plaintiffs were protected from disclosure by the law enforcement privilege. *See id; see also* *Alexander*, 186 F.R.D. at 166. To assess DoD's claim of law enforcement privilege, the court ordered DoD to submit the materials *in camera*. Subsequently, after reviewing the DoD OIG materials *in camera*, the court held two *ex parte* hearings with DoD's counsel concerning its law enforcement privilege claim. *See Alexander v. FBI, et al.*, Civ. Nos. 96-2123 & 97-1288, *Ex Parte In Camera* Hearing of January 28, 2000; *Alexander v. FBI, et al.*, Civ. Nos. 96-2123 & 97-1288, *Ex Parte, In Camera* Hearing of December 15, 1998.

After concluding its first review of the IG's file and the first hearing, the court voiced its concerns regarding the DoD's claim of law enforcement privilege. *See* [*33] *Alexander*, 186 F.R.D. at 168. Specifically, [**6] the court noted that, in addition to the breadth of the DoD's claim of privilege, it was primarily concerned that it "had no evidence before it, aside from conclusory statements in the affidavits submitted, as to the 'ongoing' nature of the investigation into the Tripp release"). The court also determined that the materials were not organized in a manner that would allow the court to conduct its privilege review in an effective or efficient manner. *Id.* The court then reserved its ruling on the law enforcement privilege until a later hearing, giving DoD an additional opportunity to prepare written submissions on the privilege and to organize the IG materials in the manner requested by the court. *Id.* at 168-69.

After the final *ex parte* hearing in January 2000 and completion of its *in camera* review, the court ultimately "determined that the materials compiled by the DoD during its investigation into the Tripp release [were] cumulative, and thus, merely duplicate the circumstantial evidence plaintiffs [had] already developed or obtained through other discovery in this case." *Alexander*, 192 F.R.D. at 40. As such, the court was not required [**7] to address the merits of the DoD's claim of law enforcement privilege, nor did the court compel the disclosure of the IG materials to the *Alexander* plaintiffs. *Id.*

In a footnote in that opinion, however, the court stated that if it had been required to reach the issue of the DoD's claim of law enforcement privilege, where a court must consider, *inter alia*, whether an investigation is "ongoing," *see* *In re Sealed Case*, 272 U.S. App. D.C. 314, 856 F.2d 268, 271 (D.C. Cir. 1988)(citing *Frankenhauser v. Rizzo*, 59 F.R.D. 339 (E.D.Pa. 1973)), the court would not have sustained DoD's claim of privilege on the basis of that factor. *Alexander*, 192 F.R.D. at 40 n.1. Rather, the court stated that it found it "impossible to fathom how an internal investigation into such a simple matter could take [almost two years] to conclude." *Id.* Further expressing its skepticism about the repeated assertions that the investigation into the Tripp release was continuing, the court noted that "the 'ongoing' nature of the investigation appears equally implausible given the fact that the Tripp release presents such a clear violation of the Privacy [**8] Act. . . ." *Id.* at 40 n.1.

Seizing upon the court's comments in the above-quoted footnote in the *Alexander* opinion, *see id.*, Bacon now advances that the court's recusal in this case is warranted under Section 455(a)and(b)(1). Specifically, Bacon contends that recusal is required because the court has "directly and unnecessarily ruled on one of the principal issues presented in this case-whether the defendants' conduct violated the Privacy Act--without the benefit of any briefing, argument, or evidence on that question." *See* Defendant Kenneth H. Bacon's Motion to Recuse, at 1 (Filed April 14, 2000).

And, in responding to defendant Bacon's motion and urging this court to grant defendant's motion to recuse, the DoD advances that recusal is warranted under Section 455(a) because the court's comment in the March 6, 2000 *Alexander* opinion has created the appearance of bias that would lead an informed observer to question the judge's impartiality. *United States v. Barry*, 295 U.S. App. D.C. 173, 961 F.2d 260, 263 (D.C. Cir. 1992). To that end, the DoD maintains that the court's comments were based on an "extrajudicial" source because Bacon [**9] and DoD were not parties to the *Alexander* proceeding, and thus had no opportunity to submit briefing or otherwise participate in the adversarial process in that case. In other words, DoD contends that "extrajudicial source" for purposes of recusal is party-specific. To that end, DoD contends that the court's comments and its review of the IG file in *Alexander* were extrajudicial to defendants Bacon and DoD in this case insofar as they were "derived from a source outside judicial proceedings in which the party that may be prejudiced has had a fair opportunity to address or rebut the court's [*34] stated conclusions." Department of Defense's Response to Motion to Recuse ("DoD Response"), at 9. In so arguing, DoD contends that *Liteky v. United States* 510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 is not controlling here, as that case only addressed recusal in the context of "intrajudicial sources" involving the same party, not a prior proceeding involving different parties. They further attempt to distinguish the present case from earlier cases denying recusal, noting that in those cases, the ruling or remark at issue was the product of "a study of the depositions and briefs which the parties had requested [the judge] to make. [**10] " *United States v. Grinnell*, 384 U.S. 563, 583, 16 L. Ed. 2d 778, 86 S. Ct. 1698 (1966); *see also* *United States v. Roach*, 323 U.S. App. D.C. 448, 108 F.3d 1477, 1483-84 (D.C. Cir. 1997) (affirming district court's denial of motion to recuse "because at the time the district judge made the remarks he had already reviewed [defendant's] motion to show cause as well as the Department's opposition, [and] he was quite familiar with the allegations and documents in [defendant's] case"). Alternatively, DoD asserts that even if the court's comments were not based on an extrajudicial source to the defendants, recusal is still required because the remarks create the appearance that the court's impartiality may be called into question, and "could suggest, to an outside observer, such a 'high degree of favoritism or antagonism' to defendants' position that 'fair judgment is impossible.'" DoD Response, at 11 (citing *Liteky v. United States*, 510 U.S. 540, 555, 127 L. Ed. 2d 474, 114 S. Ct. 1147 (1994)).

II. DISCUSSION

*HN1* Section 455(a) of Title 28 of the United States Code provides that a federal judge shall "disqualify himself in any proceeding [**11] in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). And, Section 455(b)(1) states, in relevant part, that a judge shall "disqualify himself . . . (1) where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). Whether there is any basis for questioning a judge's impartiality under Section 455(a) is to be determined by an objective standard. *United States v. Heldt*, 215 U.S. App. D.C. 206, 668 F.2d 1238, 1271 (D.C. Cir. 1981); *United States v. Fiat Motors of North Am.*, 512 F. Supp. 247, 250 (D.D.C. 1981). That is, recusal is required where the court determines that "an informed observer would reasonably question the judge's impartiality." *United States v. Barry*, 295 U.S. App. D.C. 173, 961 F.2d 260, 263 (D.C. Cir. 1992); *see also* *United States v. Jordan*, 49 F.3d 152, 155 n.3 (5th Cir. 1995) (stating that the *Liteky* opinion "neither stated nor implied that the impossibility of fair judgment test would supplant the reasonable person standard [**12] in cases involving alleged bias from an extrajudicial source). Similarly, by its terms, Section 455(b)(1) requires a demonstration of bias or prejudice derived from a "personal" or extrajudicial source.

*HN2* To sustain its burden and compel recusal under Section 455(a), the moving party must demonstrate the court's reliance on an "extrajudicial source" that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, the movant must show a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. By contrast, Section 455(b)(1) requires the moving party to demonstrate actual bias or prejudice based upon an extrajudicial source.

*HN3* Judges are presumed to be impartial. *United States v. Fiat Motors*, 512 F. Supp. at 251. Thus, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. *Liteky*, 510 U.S. at 555 (citations omitted). *HN4* To the contrary, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, *or of prior proceedings*, do not constitute a basis for [**13] a bias or partiality motion unless they [*35] display a deep-seated favoritism or antagonism that would make a fair judgment impossible." *Id.* (emphasis added). Indeed, as the Supreme Court has observed, "the judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant . . .but the judge is not thereby recusable for bias or prejudice since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." *Id.* at 550-51. Moreover, "the objective appearance of an adverse disposition attributable to information acquired in a prior trial is not an objective appearance of personal bias or prejudice, and hence, not an objective appearance of improper partiality." *Id.* at 553 n.2. Accordingly, "opinions held by judges as a result of what they learned in earlier proceedings" are "not subject to deprecatory characterization as 'bias' or 'prejudice.'" *Id.* at 551; *accord* *United States v. Barry*, 961 F.2d at 263 (stating that "remarks reflecting even strong views about a defendant will not call for a judge's recusal so long as those views are based on his own observations [**14] during the performance of his judicial duties").

Applying these standards, the court finds that defendant has failed to demonstrate either the existence of personal prejudice derived from an extrajudicial source or the appearance of prejudice based on an extrajudicial source as required for recusal under Section 455(a) or (b). *Liteky*, 510 U.S. at 555. Nor, having failed to show bias derived from an extrajudicial source, has the defendant demonstrated that the court possesses a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

To begin with, contrary to Bacon's assertion that this court had no basis for its observation on the Tripp release and the Privacy Act, the court issued its opinion in *Alexander* only after conducting an extensive *in camera* review of the entire DoD OIG's investigative file. Far from having no basis on which to make its statement, the court had the benefit of all of the materials compiled in the OIG's investigative file, materials which were properly before the court on the *Alexander* plaintiffs' motion to compel and DoD's claim of law enforcement privilege. n1 Of course, at the time the court [**15] issued its March 6, 2000 opinion in *Alexander*, the court could not disclose the fact that the OIG's internal investigation had concluded that the Tripp release violated the Privacy Act or that the OIG had referred the matter to the Public Integrity Section of the Department of Justice for a determination of whether to pursue criminal charges against Bacon and Bernath. *See, e.g., Mancuso Testimony*, 2000 WL 504527, at *108(acknowledging that the OIG investigation had found "sufficient evidence for a criminal referral to the Justice Department"). Recently, however, the Public Integrity Section has acknowledged the criminal referral and has announced that it will not pursue criminal charges against Bacon or Bernath for violating the Privacy Act. Thus, because the DoD OIG's final investigative findings and the criminal referral to the Justice Department are now matters of public record, the court can provide greater detail as to the basis for its observation in footnote 1 of the March 6, 2000 *Alexander* opinion.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Indeed, defendant Bacon's own recusal motion appears to contradict his assertion that the court lacked any basis for its comment that the Tripp release appeared to be "a clear **violation of the Privacy Act,**" as he acknowledges that the court had the OIG's entire **investigative file.** Defendant Kenneth H. Bacon's Motion to Recuse, at 4. The DoD IG has now publicly disclosed that he found "sufficient evidence for a criminal referral to the Justice Department." *See* Hearing on Acquisition Reform, Logistics and the Defense Industrial Base Before the Subcommittee on Readiness and Management Support of the Senate Committee on Armed Services, 106th Cong., April 26, 2000 (Testimony of Acting Inspector General for the Department of Defense Donald Mancuso)(available on WESTLAW at 2000 WL 504527, at *108) ("Mancuso Testimony").

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**16] [*36]

Among the materials reviewed by the court in assessing DoD's claim of law enforcement privilege were transcripts of OIG interviews of both Bacon and Bernath. In addition to the defendant's testimony, the IG's file also contained transcripts of interviews of countless other witnesses, extensive documentary evidence, including e-mails and phone records, as well as memoranda and other documents memorializing the completion of various investigative tasks. The IG file also contained draft reports of the IG's findings and conclusions.

Significantly, the court's *in camera* review of the OIG file in *Alexander* was necessitated by the fact that DoD was claiming the law enforcement privilege over certain documents subpoenaed by the plaintiffs in that case. In addition to submitting its file *in camera*, DoD provided the court with extensive briefing on this privilege claim, as well as offering oral argument at an *ex parte* hearing. Accordingly, the materials contained in the IG file were properly at issue before the court and had to be considered in order to assess whether the privilege would be sustained over plaintiffs' motion to compel production of those documents. Among the [**17] factors that the court was required to consider in reviewing the materials was whether the investigation was "ongoing." *See* In re Sealed Case, 856 F.2d at 271 (enumerating the ten *Frankenhauser* factors). To this end, the court's statement in footnote 1 addressed the court's finding on that particular factor of the law enforcement privilege only, and was not, as defendant advances, a finding of fact concerning the Privacy Act, which becomes readily apparent when the statement is viewed in context. *See infra* pp. 14-15. Thus, ***HN5*** because these materials were before the court in the course of fulfilling its judicial responsibilities, the court's exposure to these materials is not properly characterized as "extrajudicial." *Liteky*, 510 U.S. at 555; *see also* United States v. Gordon, 61 F.3d 263, 268 (4th Cir. 1995) (affirming district court's denial of recusal motion, which was based upon the court's involvement in prior related proceedings); United States v. Bailey, 175 F.3d 966, 969 (11th Cir. 1999)(*in camera* hearing does not constitute extrajudicial source)(citations omitted); United States v. Nicholson, 955 F. Supp. 582, 583 (E.D.Va. 1997) [**18] (denying defendant's motion to recuse, which was based on court's prior participation in the case as a member of the U.S. Foreign Intelligence Surveillance Court).

The court does not agree with defendant's assertion that footnote 1 to the March 6, 2000 *Alexander* opinion demonstrates "a deep-seated antagonism that would make this court's fair judgment impossible." *Liteky*, 510 U.S. at 555. As noted above, the court's comment addressed an issue that was squarely before the court, i.e., whether DoD could claim the law enforcement privilege for the IG file. The court merely referenced the conclusion reached by the administrative agency's investigation, not by this court. More importantly, however, the court made this statement in the course of expressing its considerable frustration with DoD and Public Integrity's repeated, yet seemingly empty, assertions that the investigation was still "ongoing" after nearly two years. *Compare, e.g.*, May 13, 1999 *In Camera* Declaration of Donald Mancuso, Acting Inspector General, Department of Defense, Exhibit A to *Ex Parte, In Camera* Supplemental Memorandum in Support of Non-Party Department of Defense's Law Enforcement [**19] Privilege Claim (Received May 14, 1999)(stating that first phase of OIG investigation concluded in July 1998 with its referral of the matter to the Justice Department on July 29, 1998) *with* May 6, 1999 *In Camera* Declaration of Lee J. Radek, Chief of Public Integrity Section, Criminal Division, U.S. Department of Justice, Exhibit B to *Ex Parte, In Camera* Supplemental Memorandum in Support of Non-Party Department of Defense's Law Enforcement Privilege Claim (Received May [*37] 14, 1999)(acknowledging the referral and stating that a "full investigation" has been conducted and "a decision will be made in the near future as to whether to bring criminal charges in connection with this matter") and January 20, 2000 *In Camera* Declaration of Lee J. Radek (stating that "*a decision will be made in the near future as to whether to bring criminal charges in connection with this matter*")(emphasis supplied)(The exact same wording contained in Radek's May 1999 *in camera* declaration). *See also* Alexander, 186 F.R.D. at 168 (expressing concerns voiced at first *ex parte in camera* hearing in December 1998 about whether the investigation was, in fact, "ongoing" six [**20] months after the IG's referral). In fact, after considering the DoD's briefs and affidavits submitted on the law enforcement privilege and holding the first *in camera* hearing on the issue, the court gave the DoD and Justice Department still another opportunity to provide the court with an update as to the status of the investigation, with the hope that they would provide the court with meaningful assurances that steps were in fact being taken to conclude the matter in some fashion, either by declining to prosecute or by indictment. *See* January 20, 2000 *In Camera* Declaration of Lee J. Radek. Instead, in response to the court's request for information as to what actions had been taken over the past year of the Justice Department investigation, the DoD submitted what can only be described as a singularly unhelpful affidavit from Lee Radek, Chief of the Public Integrity Section, Criminal Division at the Department of Justice. *See* January 20, 2000 *In Camera* Declaration of Lee J. Radek (stating that "since the date of my last Declaration, additional legal analyses have been performed and investigative actions have been taken and are continuing to be taken" and that "a [**21] decision will be made in the near future as to whether to bring criminal charges in connection with this matter").

Sensing that the Justice Department's investigation had become unusually protracted without any apparent explanation, the court, in footnote 1 to its March 6, 2000 *Alexander* opinion admonished DoD and, in particular, Public Integrity, for what the court reasonably perceived, under the circumstances, to be dilatory tactics designed to frustrate the court's efforts to resolve discovery disputes in *Alexander* in a timely fashion. *Liteky*, 510 U.S. at 551. In this respect, the comment in footnote 1 was precipitated by the seemingly contradictory information before the court. On the one hand, the court had reviewed the IG's file and draft report, which had concluded that defendants had violated the Privacy Act. Moreover, the court was aware that the DoD investigation had taken less than six months to conclude and that the matter had been referred to Justice in July 1998. By contrast, once at the Justice Department, the investigation appeared to languish unnecessarily, with Public Integrity representing, without any helpful detail, as late as January [**22] 2000, that the investigation was continuing. Faced with

what it perceived to be dilatory tactics on the part of Justice Department, the court, in the *Alexander* opinion, was simply voicing its "impatience, dissatisfaction, annoyance and even anger, [sentiments which] are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky*, 510 U.S. at 555-56. As such, when placed in proper context, the court's comments would not lead a reasonable observer, armed with full information, to question the court's impartiality. Nor does the footnote display the sort of deep-seated antagonism against the defendant that would appear to render this court's fair judgment impossible.

In addition to placing the March 6, 2000 *Alexander* opinion in context, it is important to recognize that the court's *in camera* review of the IG file was not the first time that the court was called upon to consider information concerning the Tripp release in the *Alexander* case. In fact, in [*38] addition to plaintiffs' motion to compel the production of documents from non-party DoD, the court presided over a number of other [**23] discovery disputes in *Alexander* involving non-parties Bacon, Bernath, and others in the Tripp release. *See Alexander v. FBI, et al.*, 186 F.R.D. 170, 171 (D.D.C. March 31, 1999)(granting in part and denying in part plaintiffs' motion to compel further testimony and documents from Kenneth Bacon); *Alexander v. FBI, et al.*, 186 F.R.D. 78, 82 (D.D.C. July 10, 1998)(addressing, *inter alia*, defendants' motion for a protective order, or in the alternative, to quash plaintiffs' motion to compel further testimony and production from Clifford Bernath); *Alexander v. FBI, et al.*, 186 F.R.D. 66, 67 (D.D.C. June 15, 1998)(addressing scope of plaintiffs' deposition of Bacon under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 95 L. Ed. 417, 71 S. Ct. 416 (1951)); *see also Alexander v. FBI*, et al., 186 F.R.D. 71, 73-76 (D.D.C. June 25, 1998)(denying non-party J. Lowe Davis' motion for protective order). Indeed, both Bacon and Bernath were deposed by the plaintiffs in *Alexander. See Alexander*, 186 F.R.D. at 69 (Bacon was deposed on May 15, 1998); *Alexander*, 186 F.R.D. at 83 [**24] (Bernath was deposed on April 30, 1998). And, following the initial depositions, plaintiffs filed subsequent motions to compel further testimony and documents from Bacon and Bernath. *See Alexander*, 186 F.R.D at 171; *Alexander*, 186 F.R.D. at 82. In response, defendants opposed plaintiffs' motions with substantive briefing. *See, e.g., Alexander v. FBI, et al.*, Civ. Nos. 96-2123 & 97-1288, Response by Non-Party Kenneth H. Bacon in Opposition to Plaintiff's Motion to Compel Further Testimony (Filed September 14, 1998); Response by Non-Party Clifford Bernath to Request for Production of Documents (Filed June 2, 1998); Non-Party Clifford Bernath's Memorandum in Opposition to Plaintiffs' Motion to Compel Further Testimony (Filed June 4, 1998); Non-Party Clifford Bernath's Supplemental Memorandum in Opposition to Plaintiffs' Motion to Compel Further Testimony (Filed June 23, 1998). In addition to its *in camera* review of the IG file, the court had already been called upon to decide a number of issues concerning defendants and the Tripp release--matters that were heavily litigated--prior to its March 6 opinion. *See Alexander*, 186 F.R.D. at 171-75; [**25] *Alexander*, 186 F.R.D. at 82-84. Significantly, these matters included legal memoranda filed by both Bacon and Bernath, as well as by the government. Thus, assuming *arguendo* that DoD's characterization of the scope of "extrajudicial source" is correct-that "extrajudicial" must be determined relative to each particular party and therefore includes prior related judicial proceedings involving different parties-defendants were hardly strangers to the *Alexander* litigation, having participated as non-parties on numerous discovery matters.

But yet another, more practical consideration compels the court to reject DoD's characterization of extrajudicial source as including prior related proceedings involving different parties. Put most simply, if this court's prior participation in a case required its recusal in a subsequently filed related case, the District Court's Local Rule 40.5, which deals with assignment of related cases, would be completely useless. *See* D.C. LCvR 40.5 (1999)(providing, *inter alia*, that cases involving common questions of fact are deemed related). In short, if defendant's reasoning were followed to its logical conclusion, assignment [**26] of related cases under 40.5 could rarely occur. Instead, as one court has aptly noted, "the judicial system could not function if judges could deal but once in their lifetime with a given defendant, or had to withdraw from a case whenever they had presided in a related or companion case in a separate trial in the same case." *United States v. Cowden*, 545 F.2d 257, 265 (1st Cir. 1976). Quite simply, DoD's characterization of "extrajudicial source" simply cannot be reconciled with the longstanding practice of assigning related cases in this District Court. Indeed, the Court of Appeals for the District of Columbia Circuit has recognized *HN6* the pragmatic considerations underlying the assignment of related cases, stating that "judges are presumed [*39] to be able to compartmentalize the information they receive and only rely on evidence relevant for a particular decision." *Clifford v. United States*, 136 F.3d 144, 148-49 (D.C. Cir. 1998). Defendant has failed to demonstrate that this presumption is inapplicable in the present case. Thus, as it has in prior cases, *see, e.g., United States v. Roach*, 323 U.S. App. D.C. 448, 108 F.3d 1477, 1483 (D.C. Cir. 1997), [**27] *modified on other grounds*, 136 F.3d 794 (D.C. Cir. 1998), this court remains confident that it will be able to fulfill its judicial obligation to remain impartial and will compartmentalize and set aside the information put before it in *Alexander* to ensure that none of it plays an improper role in any decision in this case.

III. CONCLUSION

For the reasons set forth above, it is hereby

ORDERED that Defendant Kenneth H. Bacon's Motion to Recuse is DENIED.

SO ORDERED.

Royce C. Lamberth

United States District Judge

Copyright © 2004 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.
Your use of this service is governed by Terms & Conditions . Please review them.