| | | |
|---|---|---|
| FOREST PRODUCTS NORTHWEST, INCORPORATED,<br><br>*Plaintiff,*<br><br>*v.*<br><br>UNITED STATES.<br><br>*Defendant.* | ) | Case No. 03-2485C |

**DECLARATION OF TERRY SWANSON**

COMES NOW Declarant, Terry Swanson, a director and officer of Plaintiff Northwest Forest Products, with personal knowledge of the facts set forth herein, and deposes as follows:

1. On September 29, 2003, Special Agents Ed Suarez and Randy Kivlighn appeared at our business, without prior appointment or invitation, and said they were visiting businesses in the port area to gather information to assist them in homeland security efforts.

2. Neither of the agents displayed their identification or stated that Mr. Kivlighn was conducting a Section 592(a) investigation of NWFP.

3. Eventually, Mr. Kivlighn started asking questions about NWFP's lumber imports.

4. These questions related to the actual use of the imported merchandise and, specifically, whether we were "ripping" the lumber after importation.

5. I answered in the affirmative.

7. I also took him on a tour of the facility, showed him exactly what we were doing, allowed him to take photographs, and even gave him a sample of the sort of remanufactured products that can be made using the imported lumber in its imported condition (i.e., without "ripping" it first).

8. At no time did Mr. Kivlighn or Mr. Suarez inform us that NWFP was under investigation for a possible violation of Section 592(a).

9. To the contrary, they obtained entry under the pretense of gathering information to assist them in port security efforts.

10. Thereafter, on September 30, October 1, and October 6, 2003, NWFP made, through our attorney, A. Woodson Stuart, Esq., written and oral submissions to National Import Specialist Paul Garretto in which we stipulated that NWFP was processing the merchandise after importation in a way that "nullifies" the edge-glued feature (i.e., "ripping" the lumber apart) and that the sole reason for the gluing before importation was to create a product expressly excluded from the AD/CVD orders on softwood lumber ("edge-glued lumber" of Subheading 4421.90.9700, HTSUS).

11. The first notice NWFP had of the investigation under Section 592(a) was the letter we received from Mr. Kivlighn on October 7, 2003.

12. We did not tell our customs broker, Jones & Jones, what we were doing with the merchandise until U.S. Customs started questioning its classification, and he *immediately* advised us to seek counsel with a view to making a "prior disclosure."

13. As indicated above, NWFP took that advice and timely made such a disclosure both directly and through counsel.

14. Documentation of the disclosures made through counsel is attached hereto as Exhibit 1.

**OATH AND AFFIRMATION**

I, Terry Swanson, do hereby solemnly swear and affirm, under the penalty for perjury, that the content of the foregoing declaration is true to the best of my knowledge, information, and belief.

Signature:

Terry W. Swanson

Terry Swanson

Date: 10-27-03