**<u>Hypothetical CVD Order and Import Transactions:</u>**

On January 2, 2003, DOC issues a final CVD order on "red widgets from Burundi." The order fixes the estimated CVD rate at 30% *ad valorem* for all entries of subject merchandise. U.S. Customs is required to suspend the liquidation of all entries of subject merchandise until the completion of any administrative and judicial reviews of the final CVD rate. (Requests for administrative review may not be filed until January 1, 2004.)

The order expressly includes red widgets and "purple widgets **<u>properly classified</u>** as red widgets." (There is no separate tariff provision for purple widgets, so they must be classified as either red or blue.) After affected parties request clarification, DOC issues a scope ruling excluding "purple widgets **<u>properly classified</u>** as blue widgets." (Both red widgets and blue widgets are otherwise duty free.)

**<u>Example 1A: Entry of Red Widgets</u>**

| | |
|---|---|
| January 15, 2003 | The Burundi Widget Company ("BWC") exports to the United States a shipment of red widgets that BWC classifies as such in its entry papers. BWC thereby voluntarily subjects itself to the CVD order and is required by statute to pay estimated CVDs within 10 days of entry. Meanwhile, the merchandise is immediately released by U.S. Customs and allowed to proceed to its destination, where the widgets are quickly consumed. |
| February 1, 2003 | BWC sends U.S. Customs a check for the amount of estimated CVDs based on the rate indicated in the CF-4333-A. |

**<u>Example 1B: Entry of Red Widgets</u>**

*Same scenario as in Example 1A, except as follows:*

| | |
|---|---|
| February 1, 2003 | BWC sends U.S. Customs a letter refusing to pay any estimated CVDs on the entry. |
| September 1, 2003 | The United States commences a collection action in the CIT under 28 U.S.C. § 1582(3). The United States ultimately prevails |

| | |
|---|---|
| | in this action and recovers the estimated CVDs plus interest and attorneys' fees. |

**Example 1C: Entry of Red Widgets**

*Same scenario as in Example 1B, except as follows:*

| | |
|---|---|
| February 1, 2003 | BWC sends U.S. Customs a check for the full amount of the estimated CVDs with a cover letter stating that the payment is being made under protest with a reservation of all rights to judicial review. |
| July 1, 2003 | BWC commences a refund action in the CFC under the Tucker Act, alleging that that U.S. Customs unlawfully exacted the monies paid under protest. The action is properly dismissed for lack of jurisdiction on the ground that U.S. Customs had made no decision with respect to the entry that could form the basis for a judicial review of agency action. |

**Example 2A: Entry of Purple Widgets as Blue Widgets**

| | |
|---|---|
| January 15, 2003 | BWC exports to the United States a shipment of purple widgets that BWC classifies as blue widgets in its entry papers. The merchandise is immediately released by U.S. Customs and allowed to proceed to its destination, where the widgets are quickly consumed. |
| December 15, 2003 | Just before the scheduled liquidation of the importation (314 days after entry), U.S. Customs reclassifies the entry as red widgets. The entry thereby becomes subject to the suspension of liquidation applicable to all entries of red widgets from Burundi. |
| December 24, 2003 | BWC submits estimated AD/CVDs to U.S. Customs. |
| January 2, 2004 | The Government of Burundi files an administrative review request on behalf of all exporters and producers of subject merchandise. The filing of the request automatically continues the suspension of liquidation with respect to the subject entry. |
| January 15, 2005 | DOC issues a final determination in the administrative review and fixes a final CVD rate of 20% *ad valorem.* |

| | |
|---|---|
| January 31, 2005 | The American Widget Manufacturers Association ("AWA") and affected foreign producers commence an action for judicial review of DOC's administrative review determination in the CIT under 28 U.S.C. § 1581(c). The suspension of liquidation is continued *pendente lite.* |
| June 1, 2006 | The CIT issues a decision holding that DOC did not employ a valid methodology in calculating the final CVD rate. The case is remanded to the agency for a redetermination. |
| December 30, 2006 | DOC issues a remand determination and reduces the final CVD rate to 15% *ad valorem.* |
| June 1, 2007 | The CIT affirms DOC's remand determination. |
| July 1, 2007 | The parties file cross-appeals from the CIT's final judgment to the U.S. Court of Appeals for the Federal Circuit. |
| July 1, 2008 | The U.S. Court of Appeals for the Federal Circuit issues a decision affirming the CIT's judgment. |
| September 1, 2008 | Both parties file petitions for certiorari with the U.S. Supreme Court. |
| December 30, 2008 | The U.S. Supreme Court denies certiorari and lets the Federal Circuit's decision stand. The suspension of liquidation is ended. |
| January 15, 2009 | DOC issues a liquidation order requiring the assessment of final CVDs at a rate of 15% *ad valorem.* |
| April 1, 2009 | U.S. Customs liquidates BWC's entry and assesses final CVDs. |
| May 1, 2009 | BWC files a protest of the liquidation under 19 U.S.C. § 1514(a), arguing that its entry is correctly classified as blue widgets. |
| September 1, 2009 | U.S. Customs denies BWC's protest. |
| October 1, 2009 | BWC pays the assessment of CVDs and commences an action to contest the denial of the protest in the CIT under 28 U.S.C. § 1581(a). |

| | |
|---|---|
| October 1, 2010 | The CIT enters a final judgment for BWC on the classification issue, holding that the subject widgets are properly classified as blue widgets. The court orders U.S. Customs to reliquidate the entry as blue widgets and refund the CVDs paid by BWC, plus interest from the date of payment. The government chooses not to appeal. No penalty proceedings are ever initiated under 19 U.S.C. § 1592(a). |

**<u>Example 2B: Entry of Purple Widgets as Blue Widgets</u>**
*Same scenario as in Example 2A, except as follows:*

| | |
|---|---|
| October 1, 2010 | The CIT enters a final judgment for the government on the classification issue, holding that the subject widgets are properly classified as red widgets. BWC chooses not to appeal. The government keeps the final CVDs that BWC paid under protest. |
| December 1, 2010 | U.S. Customs initiates penalty proceedings against BWC under 19 U.S.C. § 1592(a) after finding probable cause to believe that BWC knew its entry was correctly classified as red widgets (*i.e.*, that its classification at entry was fraudulent). |
| June 1, 2011 | U.S. Customs assesses a penalty. The amount of the penalty is three times the time value of the estimated CVDs that BWC failed to pay at entry. |
| July 1, 2011 | BWC pays the penalty under protest. |
| August 1, 2011 | BWC commences a refund action in the CFC under the Tucker Act. |
| August 1, 2012 | The CFC enters final judgment for BWC, holding that BWC exercised "reasonable care" in classifying its entries. The government is ordered to refund the penalty paid under protest by BWC. The government chooses not to appeal. |

**<u>Example 2C: Entry of Purple Widgets as Blue Widgets</u>**
*Same scenario as in Example 2B, except as follows:*

| | |
|---|---|
| July 1, 2011 | BWC sends U.S. Customs a letter refusing to pay the penalty assessment on the ground that it exercised "reasonable care" in |

| | |
|---|---|
| | classifying its entry. |
| July 1, 2013 | The United States commences a collection action in the CIT under 28 U.S.C. § 1582(1). BWC raises the invalidity of the reclassification decision as a defense. BWC ultimately prevails in the action, and the CIT orders a refund of the monies paid under protest. The government chooses not to appeal. |

**<u>Example 3A: Entry of Purple Widgets as Blue Widgets</u>**

| | |
|---|---|
| January 15, 2003 | BWC exports to the United States a shipment of purple widgets that BWC classifies as blue widgets in its entry papers. The merchandise is immediately released by U.S. Customs and allowed to proceed to its destination, where the widgets are quickly consumed. |
| February 1, 2003 | U.S. Customs issues a CF-29 reclassifying the entry as red widgets. The standard form CF-29 states that the entry is in the liquidation process.[1] This statement is incorrect, however, as the liquidation of entries of red widgets from Burundi is suspended. |
| February 1, 2003 | U.S. Customs takes the following actions based on its reclassification decision: (1) U.S. Customs assesses estimated CVDs of 30% *ad valorem*; and (2) finds probable cause to believe that BWC's "misclassification" was fraudulent and commences penalty proceedings under 19 U.S.C. § 1592(a). |
| March 1, 2003 | BWC sends U.S. Customs a letter refusing to pay the assessment on the ground that the subject entry is correctly classified as blue widgets. |
| March 1, 2005 | The United States commences a collection action in the CIT under 28 U.S.C. § 1582(3). BWC raises the invalidity of the reclassification decision as a defense. BWC ultimately prevails in the action, and the CIT orders a refund of the monies paid under protest. The government chooses not to appeal. |

[1] The pertinent provision of the Customs Regulations enjoins that **"[l]iquidation shall be made promptly"** after the issuance of a CF-29. 19 C.F.R. § 152.2 (emphasis added). "Promptly" is defined as **<u>within 20 days</u>** unless the Port Director makes a finding that there are "compelling reasons" to warrant further delay. *Id.* To the best of NWFP's knowledge, the Port Director was not involved in any way in the decision to issue the CF-29 to NWFP years before liquidation.

**<u>Example 3B: Entry of Purple Widgets as Blue Widgets</u>**

*Same scenario as in Example 3A, except as follows:*

| | |
|---|---|
| March 1, 2003 | BWC sends U.S. Customs a check for the full amount of the assessment with a cover letter stating that the payment is being made under protest with a reservation of all rights to judicial review. |
| April 1, 2003 | BWC commences a refund action in the CFC under the Tucker Act, alleging that the reclassification of its entry was erroneous and that the assessment of estimated CVDs constituted an unlawful exaction. BWC ultimately prevails in the action, and the CFC orders a refund of the monies paid under protest. The government chooses not to appeal. |