No. 03-2485
(Judge Block)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FOREST PRODUCTS NORTHWEST, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S PREHEARING MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

PATRICIA M. McCARTHY
Assistant Director

CLAUDIA BURKE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Fl.
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-9063
Fax: (202) 307-0972

OF COUNSEL:

CHI CHOY
Senior Attorney
Office of the Assistant
Chief Counsel
International Trade Litigation
U.S. Customs and
Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

May 14, 2004

Attorneys for Defendant

# TABLE OF CONTENTS

Page(s)

DEFENDANT'S BRIEF.......................................... 1

STATEMENT OF THE ISSUES.................................... 1

STATEMENT OF THE CASE...................................... 2

I. Nature Of The Case...................................... 2

II. Statement Of The Facts................................. 2

SUMMARY OF THE ARGUMENT.................................... 4

ARGUMENT................................................... 5

I. Standard Of Review...................................... 5

II. Legal Framework........................................ 6

A. Entry................................................... 6

B. Liquidation............................................. 8

C. Administrative Review................................... 9

III. The Court Of International Trade Possesses Exclusive Jurisdiction To Entertain Forest Products' Claims............................. 10

A. The Court Of International Trade Possesses Exclusive Jurisdiction To Review Scope Determinations .................................11

B. The Court Of International Trade Possesses Exclusive Jurisdiction To Entertain A Classification Dispute.......................... 13

C. The Court Of International Trade May Possess Jurisdiction Pursuant to 1581(i).................14

IV. Trayco Is Inapposite...............................16

V. There Was No Exaction...............................19

VI. The "Mod Act" Is Not Implicated In This Case.........20

CONCLUSION.............................................. 21

# TABLE OF AUTHORITIES

FEDERAL CASES | Page(s)

Alaska v. United States,
32 Fed. Cl. 689 (1995),
appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996) . . . . . . . . 6

Booth v. United States,
990 F.2d 617 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . 5

Casa De Cambio Comdiv v. United States,
291 F.3d 1356 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . 22

Frontier Insurance Co. v. United States,
276 F. Supp. 2d 1334 (CIT 2003) . . . . . . . . . . . . . . . . . 8

High Star Toys v. United States,
32 Fed. Cl. 176 (1994) . . . . . . . . . . . . . . . . . . 16, 9

Macrotel International Corp. v. United States,
24 Fed. Cl. 98 (1995) . . . . . . . . . . . . . . . . . . . 9, 11

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . 22

McNutt v. General Motors Acceptance Corp. of Indiana,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . . . 6

Mercado Juarez Gringos v. United States,
796 F. Supp. 531 (CIT 1992) . . . . . . . . . . . . . . . . . . . 9

Mississippi Department of Rehab. Services v. United States,
58 Fed. Cl. 371 (2003) . . . . . . . . . . . . . . . . . . . . . 9

Mitsubishi Electronics America, Inc. v. United States,
44 F.3d 973 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . 15

Reynolds v. Army & Air Force Exch. Service,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . 6

Sartori v. United States,
58 Fed. Cl. 358 (2003) . . . . . . . . . . . . . . . . . . . . . 6

St. Vincent's Medical Ctr. v. United States,
32 F.3d 548 (1994) . . . . . . . . . . . . . . . . . . . . . . 12

Travenol Laboratories, Inc. v. United States,
228 F.3d 749 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . 8

Trayco, Inc. v. United States,
994 F.2d 832 (Fed. Cir. 1993) . . . . . . . . . 8, 16, 17, 18, 19

United States v. Newport News Shipbuilding & Dry Dock Co.,
933 F.2d 996 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . 5

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . 11

Wolff Shoe Co. v. United States,
141 F.3d 1116 (Fed. Cir. 1998) . . . . . . . . . . . . . . 7, 8, 9

FEDERAL STATUTES

18 U.S.C. § 2631 . . . . . . . . . . . . . . . . . . . . . . 8

19 C.F.R. § 152.2 . . . . . . . . . . . . . . . . . . . . . 7, 13

19 C.F.R. §§ 159.0-.12 (1996) . . . . . . . . . . . . . . . . . 8

19 C.F.R. § 159.1 (1997) . . . . . . . . . . . . . . . . . . . 8

19 C.F.R. § 351.225(c)(1) . . . . . . . . . . . . . . . . . . 9

19 C.F.R. § 351.225(k)(2), (3) . . . . . . . . . . . . . . . . 10

19 U.S.C. § 1304 . . . . . . . . . . . . . . . . . . . . . . 16

19 U.S.C. § 1484 . . . . . . . . . . . . . . . . . . . . . . 6

19 U.S.C. § 1484(a)(1)(B) . . . . . . . . . . . . . . . . . . 7

19 U.S.C. § 1484(a)(1)(B)(i)-(iii) . . . . . . . . . . . . . . 7

28 U.S.C. 1491(c) . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1581(a),(c) . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1581(i) . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. § 1582 . . . . . . . . . . . . . . . . . . . . . . 16

19 U.S.C. § 1505(a) . . . . . . . . . . . . . . . . . . . . 7

19 U.S.C. § 1505(b) . . . . . . . . . . . . . . . . . . . . 8

19 U.S.C. § 1514(a) . . . . . . . . . . . . . . . . . . . . . . . 8

19 U.S.C. § 1515 . . . . . . . . . . . . . . . . . . . . . . . 8, 13

19 U.S.C. § 1516a(c)(2) . . . . . . . . . . . . . . . . . . . . . 9

ADMINISTRATIVE DECISIONS

Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36070 (May 22, 2002) . . . . . . . . . . . . . . . . . . . 6

Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36068 (May 22, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| FOREST PRODUCTS NORTHWEST, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2485 |
| | ) | (Judge B) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S PREHEARING
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Pursuant this Court's order dated April 26, 2004, defendant, the United States, respectfully submits this response to the supplemental brief of plaintiff, Forest Products Northwest Inc. ("Forest Products"), in support of its opposition to our motion to dismiss for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted.

DEFENDANT'S BRIEF

STATEMENT OF THE ISSUES

1. Whether this Court possesses jurisdiction to entertain claims concerning a United States Customs and Border Protection ("Customs") determination that Forest Products' importations are subject to antidumping and countervailing duties.

2. Whether Forest Products' allegations of misclassification present issues upon which relief can be granted.

STATEMENT OF THE CASE

I. Nature Of The Case

This case arises out of Forest Products' importation of merchandise into the United States. Customs found that this merchandise falls within the purview of certain antidumping and countervailing duties orders issued by the Department of Commerce. As a result, Forest Products was required to pay estimated antidumping and countervailing duties upon the imported merchandise. Forest Products now challenges Customs' determination in this Court, rather than in the Court of International Trade, alleging that its claims are akin to penalty refund claims which this Court has previously entertained. Forest Products has not sought any administrative remedies.

II. Statement Of The Facts

For a complete statement of facts, we refer the Court to our motion to dismiss filed on January 28, 2004. Briefly, in October, 2003 Forest Products imported two entries of lumber from Canada. The first entry of merchandise, imported under Entry No. WQO-1289736-0, was entered under subheading 4407.10.00, the tariff provision for "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm: Coniferous." Compl. Attachment 1. The second importation, under Entry No. WQO-1289757-6, was entered under subheading 4421.90.97, the provision for "[other articles

of wood...." Id. Both entries were subject to antidumping and countervailing duty orders. Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36068 (May 22, 2002); Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36070 (May 22, 2002). When it made these entries, Forest Products deposited estimated antidumping and countervailing duties, at the time of importation, in the amount of $11,212.73 and $9,145.11, respectively. Compl. at Attachment 1.

Forest Products entered this merchandise pursuant to Customs' notice of rate advance dated October 15, 2003. In this notice, Customs informed Forest Products that Forest Products merchandise had previously been entered under the wrong tariff provision. Customs notified Forest Products of the proper tariff provision under which the merchandise should be entered and indicated that "[a]ll future shipments of this product must be classified according to this Notice of Action." A1.[1]

On October 21, 2003, Forest Products brought suit in this Court, asserting three contentions that it has reasserted in its supplemental brief: first that Customs misclassified the subject

[1] Citations to "A__" refer to the appendix attached to this ressponse.

imports; second, that Customs violated the "Mod Act;" and third, that Customs erred in applying the antidumping/countervailing duty orders to the subject imports. Compl. ¶¶ 26-47; Pl. Supplemental Br. at 2.

During a hearing held on April 22, 2004, this Court requested supplemental briefing upon Forest Products' contention that there exists a "gap in jurisdiction" which permits this Court to entertain Forest Products' claims. Hearing Transcript at 50-51. Additionally, the Court requested the parties to submit supplemental briefing to explain further the general procedures of entering goods. Id.[2]

SUMMARY OF THE ARGUMENT

This Court does not possess jurisdiction to entertain Forest Products' complaint because the Court of International Trade possesses exclusive jurisdiction to entertain classification and scope disputes. Contrary to Forest Products' mischaracterization of Customs' action as "nonprotestable," Congress has established a comprehensive scheme by which estimated duties are collected at

[2] In support of its supplemental brief, Forest Products attaches a document entitled "Hypothetical CVD Order and Importer Transactions." This document appears to pose several different methods by which an importer could seek relief. However, the hypotheticals are wholly unsupported by law. Therefore, we have not responded directly to them. Additionally, to the extent Forest Products has responded to the ripeness argument argued in our motion to dismiss, we have not directly responded to that issue here, as our briefing on Forest Products' motion for protective order addresses that issue fully.

entry and then determined finally at liquidation. This comprehensive scheme leaves no gaps in the jurisdiction of the Court of International Trade. Indeed, in the event that Customs is mistaken in its determination, Customs refunds with interest, estimated duties paid by an importer. In other words, Customs's determination is protestable both at the time of liquidation or during Commerce's administrative review. At the heart of Forest Products' argument is its unwillingness to exhaust its administrative remedies. This is insufficient to establish jurisdiction.

Further, Forest Products' reliance upon Trayco, Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993) is misplaced and unpersuasive. Trayco involved a plaintiff that had no other remedy in the Court of International Trade. Here, Forest Products has at least two avenues of relief available to it, both of which could lead to a fully refund of the estimated duties paid. Therefore, the gap found in Trayco does not exist here.

## ARGUMENT

### I. Standard Of Review

As we demonstrated in our motion to dismiss, subject matter jurisdiction may be challenged at any time by the parties, by the Court sua sponte, or on appeal. Booth v. United States, 990 F.2d 617, 620 (Fed. Cir. 1993); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir.

1991). Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden to establish jurisdiction. McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); Alaska v. United States, 32 Fed. Cl. 689, 695 (1995), appeal dismissed, 86 F.3d 1178 (Fed. Cir. 1996).

In evaluating a motion to dismiss made pursuant to 12(b)(6) "the Court presumes all factual allegations in the complaint to be true and draws all reasonable inferences in favor of the nonmoving party." Mississippi Dept. of Rehab. Servs. v. United States, 58 Fed. Cl. 371, 372 (2003). Therefore, this Court "must deny a motion under RCFC 12(b)(6) if relief can be granted 'under any set of facts that could be proved consistent with the allegations.'" Sartori v. United States, 58 Fed. Cl. 358, 361 (2003) (citing NOW, Inc. v. Scheidler, 510 U.S. 249, 256 (1994)).

II. Legal Framework

A. Entry

When an importer wishes to import merchandise into the United States, it must make an "entry" by filing documentation with Customs. This documentation enables Customs to "assess properly the duties [due] on the merchandise." 19 U.S.C. § 1484; Wolff Shoe Co. v. United States, 141 F.3d 1116, 1118 (Fed. Cir.

1998). At the time of entry, the importer must also deposit estimated duties with Customs. Id.; 19 U.S.C. § 1505(a). After the proper documents are filed and the estimated duties are deposited, "the imported merchandise can pass into the commerce of the United States." Id.; 19 U.S.C. § 1490.

An importer does not have unfettered discretion to determine the correct classification of its merchandise. Pursuant to statute, an importer must use "reasonable care" in completing the entry papers. This reasonable care extends to the importer's determination of the proper tariff provision under which the goods should be entered. 19 U.S.C. § 1484(a)(1)(B). In making its entry, an importer must provide sufficient information so that Customs may properly assess duties, collect accurate statistics, and determine whether "any other applicable requirement of law is met." 19 U.S.C. § 1484(a)(1)(B)(i)-(iii).

If Customs concludes that the entered rate or value of any merchandise is too low, Customs may direct the importer to change the entry information. 19 C.F.R. § 152.2. "Liquidation shall be made promptly and shall not be withheld for a period of more than 20 days from the date of mailing of such notice unless in the judgment of the port director there are compelling reasons that would warrant such action." Id.

B. Liquidation

At some later time, "Customs reviews the entry and makes its final determination as to whether the amount of duty deposited is correct--i.e., Customs liquidates the entry." Travenol Laboratories, Inc. v. United States, 228 F.3d 749, 752 (Fed. Cir. 1997); see 19 C.F.R. §§ 159.0-.12 (1996). Liquidation is "the final computation or ascertainment [by Customs] of the duties or drawback accruing on an entry." 19 C.F.R. § 159.1 (1997). Liquidation of an entry is "final and conclusive upon all persons (including the United States and any officer thereof)." 19 U.S.C. § 1514(a). During liquidation, Customs will collect any increased duties due or refund any excess of the estimated duties deposited on entry. See 19 U.S.C. § 1505(b). Wolff, 141 F.3 at 1118.

An importer can challenge customs classification by filing a protest after liquidation of the subject entries. 19 U.S.C. § 1581(a); 19 U.S.C. § 1515. Once liquidation occurs, an importer may file a protest with Customs and contest the classification and the rate and amount of duty charged. If the protest is denied, the Court of International Trade possesses exclusive jurisdiction to review the denial. 19 U.S.C. § 1515; 18 U.S.C. § 2631; Frontier Ins. Co. v. United States, 276 F. Supp.2d 1334, 1337 (CIT 2003)("This court's subject-matter jurisdiction for matters of classification under the HTSUS is pursuant to 28 U.S.C. § 1581(a)"); Macrotel, 24 Fed. Cl. at 99

("matters that are protested or 'protestable' are within [the CIT's] jurisdiction"); Mercado Juarez Gringos v. United States, 796 F. Supp. 531, 531 (CIT 1992)(court possesses jurisdiction to entertain review of a tariff classification administrative determination).

C. Administrative Review

Liquidation cannot occur within 20 days of Customs' notification of rate advance if the Department of Commerce ("Commerce") is conducting an annual review. During an annual review by Commerce, liquidation of all entries of merchandise subject to the outstanding countervailing duty order is suspended. See 19 U.S.C. § 1504(a). Suspension of liquidation "occurs because the annual review scheme established in 19 U.S.C. § 1675(a) would be frustrated unless the final results of the review applied to the entries covered by the review." Wolff, 141 F.3d at 1118. In addition, the Court of International Trade "may enjoin the liquidation of some or all entries of merchandise covered by [the antidumping/countervailing duty order]." 19 U.S.C. § 1516a(c)(2).

During an administrative review, when issues arise as to whether a particular product is included within the scope of an antidumping or countervailing duty order, "any interested party may apply for a ruling as to whether a particular product is within the scope of an order...." 19 C.F.R. § 351.225(c)(1).

These applications are made to Commerce. Id.

If Commerce concludes in its scope ruling that the imported merchandise is not within the scope of the order, Commerce will order Customs to refund any cash deposits paid by the importer. 19 C.F.R. § 351.225(k)(2), (3). If Commerce concludes that the imported merchandise is within the scope of the relevant order, a plaintiff may file an action in the Court of International Trade, pursuant to 28 U.S.C. § 1581(c). Specifically, section 1581(c) provides that "[t]he Court of International Trade shall have exclusive jurisdiction of any civil action commenced under section 516A of the Tariff Act of 1930." Section 516A concerns judicial review of antidumping and countervailing duty determinations and states that "[a] determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order" is reviewable. 19 U.S.C. § 1516A(a)(2)(B)(vi).

## III. The Court Of International Trade Possesses Exclusive Jurisdiction To Entertain Forest Products' Claims

As we established in our motion to dismiss, this Court's jurisdiction to entertain a suit and to grant relief depends upon, and is circumscribed by, the extent to which the United states has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). Additionally, the Tucker Act,

28 U.S.C. 1491(c), states, "[n]othing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade...." 28 U.S.C. 1491(c); Macrotel Int'l Corp. v. United States, 24 Fed. Cl. 98, 99 (1995)("This Court lacks jurisdiction over "any civil action within the exclusive jurisdiction of the Court of International Trade."). Because the Court of International Trade possesses exclusive jurisdiction to entertain proper claims concerning Customs' classification and scope reviews, this Court cannot entertain this complaint. The statutory scheme pertaining to Forest Products' claims is comprehensive. Because Forest Products can seek relief administratively and in the Court of International Trade, there is no "gap in jurisdiction" that would permit this Court to exercise jurisdiction in this case.

A. The Court Of International Trade Possesses Exclusive Jurisdiction To Review Scope Determinations

Forest Products alleges that its subject imports do not fall within the scope of the antidumping and countervailing orders applied in this case. Pl. Supplemental Br. at 2. As established above, the Court of International Trade possesses exclusive jurisdiction to review scope determinations and challenges to customs classifications. 19 U.S.C. § 1516A(a)(2)(B)(vi); 28 U.S.C. § 1581(a),(c). Because this Court cannot entertain those claims over which the Court of International Trade possesses

exclusive jurisdiction, this Court cannot entertain this request for a scope review. See St. Vincent's Med. Ctr. v. United States, 32 F.3d 548, 549 (1994)(stating "[c]ourts have consistently found preemption of Tucker Act jurisdiction where Congress has enacted a precisely drawn, comprehensive and detailed scheme of review in another forum" and citing United States v. Fausto, 484 U.S. 439, 454-55 (1988)).

In its supplemental brief, Forest Products contends, incorrectly, that this complaint "does not ask the Court to review a scope ruling . . . [t]hus, the CIT's exclusive subject matter jurisdiction under 28 U.S.C. § 1581(c) is not implicated here." Pl. Supplemental Br. at 22. Although Forest Products has not characterized this case as a scope determination case, that is the essence of its claim and this is the remedy Congress provided to Forest Products. The question in this case, and the question upon which the Court has specifially requested supplemental briefing, is whether a gap in jurisdiction exists to provide this Court with jurisdiction. Forest Products' decision not to seek relief through a scope determination request does not erase the very real remedy that Congress provided, nor does it void Congress' comprehensive statutory scheme. Because Forest Products may request a scope determination, there is no gap in jurisdiction.

Forest Products also contends that a scope ruling "has

already been issued with respect to edge-glued lumber" but gives no support for this assertion. There has been no scope determination with respect to this classification. Forest Products contends that, because it disputes Customs' classification and not Commerce's actions, it need not request a scope ruling. Pl. Supplemental Br. at 22. However, Forest Products' entries have been suspended pursuant to an administrative review conducted by Commerce. Until liquidation occurs, the issue of whether Forest Products' entries fall within the scope of the antidumping/countervailing duty orders is within Commerce's domain.

B. The Court Of International Trade Possess Exclusive Jurisdiction To Entertain A Classification Dispute

As we demonstrated in our motion to dismiss, the Court of International Trade possesses exclusive jurisdiction to entertain a classification dispute. 19 U.S.C. § 1515; 18 U.S.C. § 2631 If Forest Products wishes to challenge Customs' notice of action contained in its October 15, 2003 Form 29 notification, it may do so at the time of liquidation.

As we established above, if Customs concludes that the entered rate or value of any merchandise is too low, Customs may direct the importer to change the entry information. 19 C.F.R. § 152.2. "Liquidation shall be made promptly and shall not be withheld for a period of more than 20 days from the date of mailing of such notice unless in the judgment of the port

director there are compelling reasons that would warrant such action." Id. Here, entries cannot be liquidated because Commerce is currently conducting an administrative review that includes the entries in this case. 19 U.S.C. § 1504(a). An administrative review is more than a compelling reason to delay liquidation. In fact, suspension of liquidation pending a review is routine and required. Id. Forest Products has not lost its ability to challenge Customs' classification. It may have to wait longer than expected but it still has available relief in the Court of International Trade. In any event, if Customs was incorrect in its determination, Forest Products would receive its deposits with interest, at liquidation. Because Forest Products can still seek relief administratively and in the Court of International Trade, there cannot exist any gap in jurisdiction such that this Court would possess jurisdiction.

### C. The Court Of International Trade May Possess Jurisdiction Pursuant To 1581(i)

Even if, for the sake of argument, the Court determines that the Court of International Trade does not possess exclusive jurisdiction to entertain Forest Products' classification and scope disputes, that court would not be divested of jurisdiction. In addition to jurisdiction pursuant to 28 U.S.C. §1581(a) to review Customs decisions that were protested under 19 U.S.C. §§1514, 1515 and jurisdiction under 28 U.S.C. §1581(c) to review Commerce decisions, the Court of International Trade could

possess jurisdiction pursuant to §1581(i), which provides a jurisdictional basis for challenges not covered by subsections 1581(a)-(h). Mitsubishi Electronics Am., Inc. v. United States, 44 F.3d 973 (Fed. Cir. 1994) (Court of International Trade did not possess jurisdiction pursuant to § 1581(a) to entertain importer's challenge of antidumping duty rate, but would have had jurisdiction under §1581(i) if statute of limitations had not expired).

Section 1581(i) gives the Court of International Trade exclusive jurisdiction over actions commenced against the United States that arises out of any law providing for: (1) revenue from imports or tonnage, (2) tariffs, duties, fees or other taxes on the importation of merchandise for reasons other than the raising of revenue, (3) embargoes or other quantitative restrictions, (4) administration and enforcement with respect to matters referred to in (1) through (3) of § 1581(i) and subsections (a) through (h) of §1581. 28 U.S.C. § 1581(i). The issues in this action, whether Forest Products' merchandise is subject to Antidumping/Countervailing duties and whether Customs is entitled to collect the estimated Antidumping/Countervailing duties at the time of entry (as opposed to at liquidation as urged by plaintiff), fall squarely within the subject matter jurisdiction of §1581(i). Specifically, this case involves duties that are "tariffs, duties fees, on the importation of merchandise for reasons other than raising of revenue," and enforcement with

respect to matters concerning those duties. Therefore, in any event, the Court of International Trade would possess jurisdiction pursuant to section 1581(i).

IV. *Trayco* Is Inapposite

Forest Products has incorrectly characterized its case as a penalty refund case, relying upon Trayco, Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993)(finding that district court possesses jurisdiction pursuant to Tucker Act to review legality of penalty imposed by Customs Service) and High Star Toys v. United States, 32 Fed. Cl. 176 (1994)(finding that "refunds for improper collections of customs duties, and the forfeiture provisions of the customs laws, have been considered to be within the scope of the Tucker Act."). Compl. ¶ 2. This reliance is misplaced. Trayco and High Star present wholly different claims.

The gap in the Court of International Trade's jurisdiction found in Trayco is a very narrow one. The gap appeared in Trayco because the case involved a penalty pursuant to 19 U.S.C. § 1592, for the violation of the marking statute, 19 U.S.C. § 1304. Unlike here, the specific grants of jurisdiction pursuant to 28 U.S.C. § 1581(i) did not cover this set of facts. Trayco, 994 F.2d at 836. Additionally, the specific grant of jurisdiction pursuant to 28 U.S.C. § 1582 did not cover the set of facts present in Trayco. The court in Trayco noted that 28 U.S.C. § 1582 "grants exclusive jurisdiction to the Court of

International Trade over civil actions arising out of import transactions *commenced by the United States*," id. (emphasis in original), and the United States did not commence the action in Trayco. Section 1582 provided the only possible remedy to the plaintiff in Trayco, but did not provide explicit jurisdiction over a suit instituted by the importer. For this reason, the court found that a gap in the Court of International Trade's jurisdiction existed.

Here, as we have demonstrated, Forest Products has at least two avenues of relief. It can seek a scope determination from Commerce or it can await liquidation and challenge Customs' liquidation at that time. A gap in jurisdiction is not created merely because the congressional scheme of administrative remedies takes time.[3] Although administrative redress exists in this case, Forest Product wishes not to wait for the completion of the administrative process.

The court noted that the plaintiff in Trayco could have refused to pay the penalty and waited to be sued by Customs. Trayco, 994 F.2d at 837. However, the court found that the question was whether the Court of International Trade possessed exclusive jurisdiction to entertain refund suits initiated by importers. Id. Here, however, the Court of International Trade

[3] The plaintiff in Trayco exhausted its administrative remedies. Trayco, Inc. 994 F.2d at 835.

possesses exclusive jurisdiction to entertain suits involving classification and scope disputes. This review by the Court of International Trade can result in the refund, with interest, of Forest Products' estimated antidumping/countervailing duties. Therefore, there is no gap in the Court of International Trade's jurisdiction.

Forest Products attempts to characterize Customs' action in this case as a nonprotestable event "outside the context of liquidation." Pl. supplemental br. at 23. Customs is permitted to issue a Form 29 reclassification. 19 C.F.R. § 152.2. The regulation indicates that "[l]iquidation shall be made promptly and shall not be withheld for a period of more than 20 days from the date of mailing of such notice unless in the judgment of the port director there are compelling reasons that would warrant such action." Id. (emphasis added). As we demonstrated above, Customs is legally required to suspend liquidated pending an administrative review. 19 U.S.C. § 1504(a). This constitutes a compelling reason. Moreover, suspension of liquidation is only temporary. Forest Products has only made cash deposits of estimated antidumping and countervailing duties. The final accounting as to how much antidumping and countervailing duties, if any, owed by Forest Products, will not be determined until liquidation. After the review is concluded, the entries will be liquidated and Forest Products can contest Customs' determination

at that time. Therefore, Forest Products is incorrect that Customs' action occurred "outside the context of a liquidation."

V. There Was No Exaction

In the hearing held on April 22, 2004, the Court requested that the parties specifically address the question of whether a Government exaction had occurred. Transcript at 51. No exaction occurred in this case.[4]

The Tucker Act waives sovereign immunity for actions to recover illegal exactions of money by the United States. Martinez v. United States, 333 F.3d 1295, 1302 (Fed. Cir. 2003). An illegal exaction exists "only if money has been 'improperly exacted or retained' by the government." Casa De Cambio Comdiv v. United States, 291 F.3d 1356, 1363 (Fed. Cir. 2002). The Court of International Trade possesses exclusive jurisdiction to determine whether the estimated duties paid by Forest Products were correctly assessed. As demonstrated above, the Court of International Trade can review Customs' classification at liquidation, or the Court of International Trade can review

[4] Forest Products relies upon High Star in support of its illegal exaction argument. For a full discussion of High Star, please see our motion to dismiss. Briefly, High Star held that this Court held that it possessed jurisdiction to entertain the refund claim. High Star, 32 Fed. Cl. at 179 (stating "refunds for improper collections of customs duties, and the forfeiture provisions of the customs laws, have been considered to be within the scope of the Tucker Act[.]" and citing Trayco). However, as noted above, it is for the Court of International Trade to determine whether Customs has assessed duties properly. Customs will do so at liquidation.

Commerce's scope determination. To hold that each importer could seek relief in this Court each time it disagreed with a classification of its merchandise would be to undermine permanently the comprehensive scheme Congress created to determine whether the agency has acted correctly.

VI. The "Mod Act" Is Not Implicated In This Case

In its complaint and supplemental brief, Forest Products relies upon 19 U.S.C. 1625(c), the Customs Modernization Act, as a basis for relief. Compl. at ¶ 13; Pl. Supplemental Br. at 4-9. This statute requires Customs to follow certain notice and comment procedures when rendering an interpretive decision that modifies treatment previously accorded by Customs. Specifically, section 1625(c) confers upon the plaintiff the following: the right to notice of a proposed interpretive ruling that modifies or revokes another interpretive ruling or modifies a treatment; an opportunity to comment upon the proposed interpretive ruling; and a delayed effective date of the final interpretive ruling.

There is no interpretive ruling at issue here. Customs has not changed the its interpretation of the tariff provision. As we demonstrated above, it is the burden of the importer to classify its merchandise properly. Customs does not issue an interpretive ruling when it notifies an importer that its merchandise has been improperly classified. The only question in this case is whether Forest Products' subject merchandise falls

within the scope of the antidumping and countervailing duty order in this case.

CONCLUSION

For these reasons, defendant respectfully requests that the Court dismiss the complaint and grant defendant such other and further relief as this Court deems just and proper.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Patricia M. McCarthy

PATRICIA M. McCARTHY
Assistant Director

s/ Claudia Burke

CLAUDIA BURKE
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Fl.
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 353-9063
Fax: (202) 307-0972

OF COUNSEL:

CHI CHOY
Senior Attorney
Office of the Assistant
Chief Counsel
International Trade Litigation
U.S. Customs and
Border Protection
26 Federal Plaza, Room 258
New York, NY 10278

May 14, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 14th day of May, 2004, a copy of the foregoing notice of appearance, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Claudia Burke