REPLY IN SUPPORT OF PREHEARING MEMORANDUM

In the

# United States Court of Federal Claims

No. 03-2485C (Block, J.)

FOREST PRODUCTS NORTHWEST, INC.,

*Plaintiff,*

*v.*

UNITED STATES OF AMERICA,

*Defendant.*

Reply in Support of Plaintiff's Prehearing Memorandum in Opposition
to Defendant's Motion to Dismiss Under RCFC Rule 12(b).

A. Woodson Stuart
JONES & STUART, LLP
2300 M Street, NW, Suite 800
Washington, D.C. 20037
Tel: (202) 297-3196
Fax: (202) 338-0270

Date: May 21, 2004

*Attorney for the Plaintiff*

**I. INTRODUCTION** .......... 1

**II. "EXHAUSTION OF REMEDIES" IS AN ABSTENTION DOCTRINE THAT COMES INTO PLAY ONLY IF THE COURT HAS JURISDICTION** .......... 1

**A. It Would Be Inappropriate to Require Further "Clarification" of the Scope of the AD/CVD Orders from DOC.** .......... 3

**B. The "Primary Jurisdiction" Doctrine Is Also Inapplicable On These Facts.** .......... 7

**C. It Would Be Inappropriate to Require NWFP to Pursue Its Remedy of Protesting the Liquidation of its Entries.** .......... 11

**III. THE GOVERNMENT'S ARGUMENT THAT JURISDICTION "MAY" EXIST UNDER SECTION 1581(I) IS WITHOUT MERIT.** .......... 13

**IV. THIS COURT CLEARLY HAS JURISDICTION OVER NWFP'S REFUND CLAIM** .......... 14

**V. THE ASSESSMENT AND COLLECTION OF MONEY IS CLEARLY AN "EXACTION."** .......... 16

**VI. U.S. CUSTOMS CLEARLY VIOLATED THE MOD ACT** .......... 17

**VII. CONCLUSION** .......... 19

# TABLE OF AUTHORITIES

*Cases*

*American Air Parcel Forwarding v. United States,* 718 F.2d 1546 (Fed. Cir.1983),
*cert. denied,* 466 U.S. 937 (1984).....................................................................14
*American Bayridge Corp. v. United States,* 35 F. Supp. 2d 922 (Ct. Int'l Trade 1998)....17
*Anhydrides & Chemicals Inc. v. United States,* 130 F.3d 1481 (Fed. Cir. 1997).............19
*Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264 (1821)..........................................................19
*Gibson v. Berryhill,* 411 U.S. 564 (1973)..........................................................................12
*High Star Toys v. United States,* 32 Fed. Cl. 176 (1994)...........................................15, 16
*Jones v. Califano,* 576 F.2d 12 (2nd Cir. 1978)...................................................................7
*K-Mart Corp. v. Cartier, Inc.,* 485 U.S. 176 (1988)........................................................15
*Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen v.*
*Jewel Tea Co.,* 381 U.S. 676 (1965).........................................................................7, 8, 9
*Magone v. Luckemeyer,* 139 U.S. 612 (1891)............................................................16, 17
*McCall Stock Farms Inc. v. United States,* 14 F.3d 1562 (Fed. Cir. 1993).......................12
*McCarthy v. Madigan,* 503 U.S. 140 (1992) .......................................................... *passim*
*Merritt v. Welsh,* 104 U. S. 694 (1881)................................................................... *passim*
*Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir.1987),
*cert. denied,* 484 U.S. 1041 (1988)...................................................................................14
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29 (1983)...........4
*National Corn Growers Ass'n v. Baker,* 840 F.2d 1547 (Fed. Cir. 1988).........................14
*Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356 (Fed. Cir.1992)....................14
*Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249 (1977) ....................................19
*Precision Specialty Metals, Inc. v. United States,* 182 F. Supp. 2d 1314
(Ct. Int'l Trade 2001)............................................................................................................18
*Schott Optical Glass, Inc. v. United States,* 750 F.2d 62 (Fed. Cir. 1984).............5, 10, 11
*Seeberger v. Farwell,* 139 U.S. 608 (1891)........................................................................17
*Skaw v. United States,* 740 F.2d 932 (Fed. Cir. 1984)..........................................................9
*Trayco, Inc. v. United States,* 994 F.2d 832 (Fed. Cir. 1993).................................. *passim*

*Voris v. Eikel*, 346 U.S. 328 (1953) ....................19
*Walker v. Southern R. Co.*, 385 U.S. 196 (1966) ....................12
*Worthington v. Robbins*, 139 U.S. 337 (1891) ....................17
*United States v. Haun*, 124 F.3d 745 (6th Cir. 1997) ....................6, 19
*United States v. Levitt*, 26 Fed. Cas. 919 (D. Mass. 1842) ....................17
*United States v. Schoverling*, 146 U.S. 76 (1892) ....................17
*United States v. Uniroyal, Inc.*, 687 F.2d 467 (Ct. Cust. & Pat. App. 1982) ....................14

*Statutes*

Harmonized Tariff Schedule of the United States, 19 U.S.C. § 1202 note:
Item 4421.90.97.40 .................... *passim*
Heading 4421 ....................18
5 U.S.C. § 703 ....................12
5 U.S.C. § 704 ....................12
19 U.S.C. § 1514(a)(4) ....................6, 11
19 U.S.C. § 1514(a)(5) ....................11, 12
19 U.S.C. § 1592(a) .................... *passim*
19 U.S.C. § 1595(a) ....................15
19 U.S.C. § 1625(c) .................... *passim*
28 U.S.C. § 1581(a) .................... *passim*
28 U.S.C. § 1581(i) ....................13, 14
28 U.S.C. § 1582(1) ....................16
28 U.S.C. § 1582(2) ....................7, 16
28 U.S.C. § 1582(3) ....................7, 16

*Rules*

Rule 12(b), Rules of the U.S. Court of Federal Claims ....................16

*Administrative Materials*

19 C.F.R. § 141.10(a) ....................6

19 C.F.R. § 141.64 ....6
19 C.F.R. § 141.68(c)....6
19 C.F.R. § 141.101(a)....6
19 C.F.R. § 141.113(c)....6
19 C.F.R. § 152.11 ....5, 10
19 C.F.R. § 351.225(a)....3
Customs Service Headquarters Ruling 087616 (Aug. 20, 1990)....18
Customs Service Headquarters Ruling B80847 (Jan. 23, 1997)....18
Customs Service Headquarters Ruling I85263 (Sept. 12, 2002) ....18
*Notice of Final Affirmative Countervailing Duty Determination: Certain Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 15545, 15546 n.1 (DOC Apr. 2, 2002)....4
*Final Results of Countervailing Duty Expedited Reviews: Certain Softwood Lumber Products from Canada*, 68 Fed. Reg. 24436, 24438 (DOC May 7, 2003)....3

**REPLY IN SUPPORT OF PLAINTIFF'S PREHEARING MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW Plaintiff, Forest Products Northwest, Inc., doing business as Northwest Forest Products ("NWFP"), and hereby submits this Reply in Support of its Prehearing Memorandum in Opposition to the Motion to Dismiss filed by the United States on January 28, 2004, and respectfully requests that said motion be DENIED.

## I. INTRODUCTION

In its motion to dismiss and prehearing brief, the government confuses the exhaustion of remedies doctrine, which is prudential and discretionary, with subject matter jurisdiction, which is absolute and precludes a court from deciding a case. This confusion has made analysis of the two distinct concepts difficult, particularly given the government's failure to recite and apply the balancing test that the Supreme Court has ordained for analyzing exhaustion arguments. Nevertheless, NWFP will endeavor to supply these omissions and address the government's exhaustion argument before proceeding to the jurisdiction issue. It should be borne in mind, however, that the Court cannot reach the exhaustion issue unless and until it determines that it has jurisdiction in the case. In other words, the existence of alternative administrative remedies *vel non* is irrelevant to the Court's threshold determination as to whether it has jurisdiction.

## II. "EXHAUSTION OF REMEDIES" IS AN ABSTENTION DOCTRINE THAT COMES INTO PLAY ONLY IF THE COURT HAS JURISDICTION

This Supreme Court long has acknowledged the general requirement that parties exhaust prescribed administrative remedies before seeking relief from the courts. *McCarthy v. Madigan,* 503 U.S. 140, 146-49 (1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50-51 & n.9 (1938)). Exhaustion is required because it

serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. *Id.*

"Notwithstanding these substantial institutional interests, federal courts are vested with a 'virtually unflagging obligation' to exercise the jurisdiction given them." *Id.* (quoting *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817-818 (1976). The courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id.* (citing *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 404 (1821)). Accordingly, the Supreme Court has not required exhaustion in some circumstances even where administrative and judicial interests would counsel otherwise. *Id.*

In determining whether exhaustion is required, federal courts must balance the interest of the individual in prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion. *Id.* Administrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further. *Id.* (citing *West v. Bergland,* 611 F.2d 710, 715 (8th Cir. 1979), *cert. denied,* 449 U.S. 821 (1980)). Application of this balancing principle is "intensely practical," because attention is directed to both the nature of the claim presented and the characteristics of the particular administrative procedure provided. *Id.* (quoting *Bowen v. City of New York,* 476 U.S. 467, 484 (1986)).

In this case, the government argues that NWFP should be required to exhaust one of two alternative remedies: (1) requesting a scope ruling from the Department of Commerce ("DOC"); or (2) waiting until liquidation, which is suspended indefinitely,

and filing an administrative protest of the reclassification of its merchandise at liquidation. Each of these remedies will be addressed in turn.

### A. It Would Be Inappropriate to Require Further "Clarification" of the Scope of the AD/CVD Orders from DOC.

This case arises not from an ambiguity in a DOC scope definition, but from the refusal of U.S. Customs to follow scope rulings by which DOC "clarified" any such ambiguity. *See* 19 C.F.R. § 351.225(a) (purpose of scope rulings is to "clarify" ambiguities in scope definitions); *Final Results of Countervailing Duty Expedited Reviews: Certain Softwood Lumber Products from Canada*, 68 Fed. Reg. 24436, 24438 (DOC May 7, 2003) (Compl. Ex. 8).[1]

The government contends that DOC has not made any scope determination with respect to edge-glued wood. This contention is incorrect. On April 2, 2002, DOC announced that it had "determined, through [its] review of the petition and factual information submitted, and consultations with the parties," that certain disputed remanufactured lumber products "were outside the scope of the investigations," to wit:

1. Trusses and truss kits, properly classified under HTSUS 4418.90.
2. I-Joist beams.
3. Assembled box spring frames.
4. Pallets and pallet kits, properly classified under HTSUS 4415.20.
5. Garage doors.
6. **Edge-glued wood, properly classified under HTSUS item 4421.90.[97].40**.

---

[1] The government contends that NWFP "alleges that its . . . imports do not fall within the scope of the antidumping and countervailing orders applied in this case. Pl. Supplemental Br. at 2." Def.'s Resp. to Pl.'s Prehearing Memo. at 11. This is not an accurate characterization of NWFP's claim. NWFP's claim is that U.S. Customs misclassified its merchandise under Heading 4407, HTSUS, and that this action violates "the scope order issued by the U.S. Department of Commerce ('DOC') excluding '[e]dge-glued wood, properly classified under HTSUS Item 4421.90.[97].40,' from the AD/CVD cases." Pl.'s Prehearing Memo. at 2. Thus, this is a customs classification case and does not raise any genuine issue with respect to the scope definition of the AD/CVD orders.

7. Properly classified complete door frames.
8. Properly classified complete window frames.
9. Properly classified furniture.

*Notice of Final Affirmative Countervailing Duty Determination: Certain Softwood Lumber Prods. from Canada*, 67 Fed. Reg. 15545, 15546 n.1 (DOC Apr. 2, 2002) (emphasis added).

DOC has repeatedly reaffirmed its determination that edge-glued wood properly classified under Item 4421.90.97.40, HTSUS, is outside the scope of the AD/CVD orders. *See, e.g., Final Results of Countervailing Duty Expedited Reviews: Certain Softwood Lumber Products from Canada*, 68 Fed. Reg. 24436, 24438 (DOC May 7, 2003) (Compl. Ex. 8) ("Finally, **as clarified throughout the course of the investigation**, the following products . . . remain outside the scope of this order. . . . 6. Edge-glued wood, properly classified under HTSUS item 4421.90.98.40. . . . .") (emphasis added).

NWFP agrees with DOC's scope determination on edge-glued wood, and, indeed, relied upon it in making its import decisions. There is no reason to believe that DOC would depart, or properly could depart, from its clear and consistent policy with respect to edge-glued wood, even if NWFP requested yet another "clarification." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983). DOC's scope exclusion cross-references the HTSUS for a reason. It is impracticable for DOC to administer scope issues on an entry-by-entry basis, especially in the lumber cases.[2] So the agency left it to U.S. Customs and its reviewing courts to define the precise contours

[2] *See, e.g., Notice of Final Affirmative Countervailing Duty Determination: Certain Softwood Lumber Prods. from Canada,* 67 Fed. Reg. 15545, 15547 (DOC Apr. 2, 2002) ("By memorandum of February 20, 2002, the Department announced that we found it practicable to consider only 30 of the more than 300 company-specific requests for exclusion."); Prehearing Memo. in Supp. of Pl.'s Mot. for Prot. Order Ex. A (DOC memorandum announcing that it would consider only 11 of the 148 requests for exclusion filed by independent lumber remanufacturers in the first round of administrative reviews).

of the exclusion of edge-glued wood by reference to customs classification. It would upset the carefully-calibrated administrative scheme for defining the scope of AD/CVD orders to require importers to obtain a scope ruling when DOC already has repeatedly "clarified" the alleged ambiguity. Thus, the "institutional interests" of DOC would not be advanced by requiring exhaustion in this case.

In addition, it should be noted that because of the potential for liability for penalties based on the alleged misclassification of its merchandise, NWFP would not be able to obtain a complete remedy by pursuing a scope ruling. Only a judicial decision on the classification issue can eliminate all of NWFP's potential liability. *See* 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the [HTSUS] **as interpreted by** administrative and **judicial rulings**.") (emphasis added); *see also Schott Optical Glass, Inc. v. United States,* 750 F.2d 62, 64 (Fed. Cir. 1984) (rejecting the argument that *stare decisis* does not apply in classification cases). Thus, this case could be back in this Court down the road if the classification issue is not decided now.

Finally, NWFP's statutory right to rely on rulings and prior treatments of its merchandise by U.S. Customs is being denied, and this is causing mounting non-compensable economic loss on the company. The Supreme Court recognized the chilling effect of uncertainty on legitimate commerce long ago. Not surprisingly, the Court did so in cases that, like this one, involved attempts by customs officials to read implied "actual use" restrictions into particular tariff provisions. For example, in *Merritt v. Welsh,* 104 U. S. 694 (1881), the Court admonished that if actual use is to be relevant to classification:

> let it be so declared by the laws; and then the merchant will know on what he has to depend. ***Uncertainty and ambiguity are the bane of commerce.***

> ***Discretion in the custom-house officer should be limited as strictly as possible.*** It has been said with much truth, "Where law ends, tyranny begins."

*Id.* at 704 (emphasis added).[3]

For the foregoing reasons, the balance of institutional versus private interests favors NWFP, and requiring the company to pursue a scope ruling therefore would be inappropriate. *See McCarthy,* 503 U.S. at 146-49. "A federal court may not abdicate its adjudicative duty simply because an action sounds an administrative tone." *United States v. Haun,* 124 F.3d 745 (6th Cir. 1997).

It should be noted that, for all its talk of alternative remedies, the government studiously avoids mentioning the two alternative remedies foreclosed by its own actions. The government does not dispute that U.S. Customs could have refused to accept NWFP's payments under protest and rejected the entries in suit, which would have allowed a timely judicial review of the classification issue in the Court of International Trade ("CIT"). *See* 19 U.S.C. § 1514(a)(4); 28 U.S.C. § 1581(a); 19 C.F.R. §§ 141.64, 141.68(c), 141.101(a) & 141.113(c); *see also Trayco Inc. v. United States,* 994 F.2d 832, 839 (Fed. Cir. 1993) ("the government could have refused to accept Trayco's check").[4] The government also does not dispute that if NWFP had not paid the estimated

[3] The government contends that a post-liquidation remedy would be adequate, because NWFP will get a refund plus interest if it prevails on the classification issue. This contention ignores the economic reality recognized in *Merritt* and its progeny, which U.S. Customs is itself counting on, that the uncertainty created by its reclassification will reduce or eliminate further imports of edge-glued wood by NWFP until the issue is resolved. *McCarthy,* 503 U.S. at 149 (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims") (quoting *Patsy v. Florida International Univ.,* 634 F.2d 900, 912-13 (5th Cir. 1981) (*en banc*), *rev'd on other grounds sub nom., Patsy v. Board of Regents of Florida,* 457 U.S. 496 (1982)).

[4] Indeed, at the April 22, 2004, hearing, the government's trial attorney specifically noted that if NWFP had not paid the estimated AD/CVDs after the reclassification of its merchandise, its entries could have been rejected.

AD/CVDs at all, U.S. Customs could have commenced a collection action under 28 U.S.C. § 1582(2) or (3).

According to the Federal Circuit in *Trayco,* this gave NWFP "the option, and more importantly, the right" to pay the entry duties under protest and commence an importer-initiated action for a refund. 994 F.2d at 837. The government cannot be heard to complain about an alleged failure to exhaust administrative remedies when the government itself deliberately foreclosed the primary administrative remedies that Congress prescribed for the situation in question. *See McCarthy,* 503 U.S. at 149 (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims") (quoting *Patsy v. Florida International Univ.,* 634 F.2d 900, 912-13 (5th Cir. 1981) (*en banc*), *rev'd on other grounds sub nom., Patsy v. Board of Regents of Florida,* 457 U.S. 496 (1982)); *see also Jones v. Califano,* 576 F.2d 12 (2nd Cir. 1978) (agency should not be allowed to "evade judicial review" by its own deliberate action or inaction).

### B. The "Primary Jurisdiction" Doctrine <u>Is Also Inapplicable On These Facts.</u>

Another source of confusion in the government's brief is its failure to analyze the "primary jurisdiction" issue raised by its argument that NWFP should have to pursue a scope ruling. "The doctrine of primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views." *Local Union No. 189, Amalgamated Meat Cutters & Butcher Workmen v. Jewel Tea Co.,*

381 U.S. 676, 686 (1965) (citation and internal quotation marks omitted). The doctrine is based on the principle that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over, and requires judicial abstention in cases where protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme. *Id.* (citations and internal quotation marks omitted).

In *Meat Cutters,* the Supreme Court rejected the argument that abstention was warranted under the primary jurisdiction doctrine in an antitrust action brought by an employer against a union. The union's liability depended on whether certain collective bargaining subjects were properly classified as "terms and conditions of employment" under Section 8(d) of the National Labor Relations Act. The Court analyzed the issue as follows:

> Obviously, classification of bargaining subjects as "terms or conditions of employment" is a matter concerning which the Board has special expertise. Nevertheless, . . . we cannot conclude that this is a proper case for application of the doctrine of primary jurisdiction.
>
> To begin with, courts are themselves not without experience in classifying bargaining subjects as terms or conditions of employment. Just such a determination must be frequently made when a court's jurisdiction to issue an injunction affecting a labor dispute is challenged . . . .
>
> Secondly, the doctrine of primary jurisdiction is not a doctrine of futility; it does not require resort to "an expensive and merely delaying administrative proceeding when the case must eventually be decided on a controlling legal issue wholly unrelated to determinations for the ascertainment of which the proceeding was sent to the agency." . . . At the stage when the decision whether to refer the parties to the Board was made, therefore, the issues were so framed that a Board determination would have been of subsidiary importance at best.

> Finally, we must reject the unions' primary-jurisdiction contention because of the absence of an available procedure for obtaining a Board determination. The Board does not classify bargaining subjects in the abstract but only in connection with unfair labor practice charges of refusal to bargain. The typical antitrust suit, however, is brought by a stranger to the bargaining relationship, and the complaint is not that the parties have refused to bargain but, quite the contrary, that they have agreed. Jewel's conspiracy allegation in the present case was just such a complaint. Agreement is of course not a refusal to bargain, and in such cases the Board affords no mechanism for obtaining a classification of the subject matter of the agreement. . . . "We know of no case where the court has ordered reference of an issue which the administrative body would not itself have jurisdiction to determine in a proceeding for that purpose."

*Meat Cutters,* 381 U.S. at 686 (citations omitted).

The Federal Circuit had occasion to apply the doctrine of primary jurisdiction in a Claim Court case in *Skaw v. United States,* 740 F.2d 932 (Fed. Cir. 1984). In that case, the government asked the Federal Circuit to instruct the Claims Court to refer the questions of validity and location of the plaintiff's mining claims to Department of Interior under the doctrine of primary jurisdiction. The Federal Circuit rejected the government's request. The court analyzed the issue as follows:

> The government candidly admits that since Interior has already ruled that the claims are null and void, it is doubtful whether that department now has jurisdiction to decide the discovery issue. We agree, and for several other reasons, reject the suggestion. We do not think that the doctrine of primary jurisdiction requires a court to refer a question to an agency where, as here, the agency has declined to decide the precise question on a prior reference by the court. As the Supreme Court has observed, "the doctrine of primary jurisdiction is not a doctrine of futility."
>
> It is highly probable that a second referral to Interior would result only in further delaying the trial in the Claims Court, and increasing the expense to both parties. Furthermore, the parties agree that the Claims Court is competent to decide the question, just as district courts frequently do in condemnation cases.
>
> Fairness to the plaintiffs is also a consideration which militates strongly against the adoption of the government's suggestion. . . . nwfp'sThe

> plaintiffs] should not be made to suffer another prolonged delay, when there is no real justification . . . . Therefore, the Claims Court should proceed expeditiously to resolve these and other issues remanded in this decision.

*Id.* (citations omitted).

In this case, the doctrine of primary jurisdiction is clearly inapplicable too. DOC already has determined that edge-glued wood properly classified under Item 4421.90.97.40, HTSUS, is outside the scope of the AD/CVD orders. DOC has repeatedly reaffirmed this determination, and it is unlikely that the agency would or properly could change that position if NWFP requested yet another "clarification." Thus, pursuing a scope ruling would be pointless.

Moreover, pursuing a scope ruling would be expensive for NWFP and would further stretch DOC's resources in a case in which they already are stretched too thin. It also would take a lot of time, and the delay would cause harm to NWFP's business because of the chilling effect the government's action is having on the company's import activity. Finally, DOC has no expertise in tariff classification, and no jurisdiction to decide the classification issue in this case. Only a judicial decision on the classification issue will provide complete relief to NWFP because of its potential liability for penalties under 19 U.S.C. § 1592(a). While this Court would not be directly addressing the issue of penalties, it would be deciding whether the merchandise was misclassified by NWFP at entry, which is a necessary precondition for the assessment of penalties. This Court's ruling would be *stare decisis* in any penalty proceedings, and a decision for NWFP could end up saving the company and the taxpayers a lot of money by resolving the classification issue now. *See* 19 C.F.R. § 152.11; *see also Schott Optical Glass*, 750 F.2d

at 64. Otherwise, chances are this case is going to be back in this Court down the road on the classification issue.

For the foregoing reasons, it would be inappropriate for the Court to abstain from exercising jurisdiction under the Tucker Act in this case based on the doctrine of primary jurisdiction.

### C. It Would Be Inappropriate to Require NWFP to Pursue Its Remedy of Protesting the Liquidation of its Entries.

A classification decision by U.S. Customs is not "protestable" *per se* and cannot be reviewed in the CIT under 28 U.S.C. § 1581(a) unless and until embodied in a "protestable" action, such as the rejection of an entry, *see* 19 U.S.C. § 1514(a)(4), or the liquidation of an entry, *see id.* § 1514 (a)(5).[5] The government argues that NWFP should be required to wait until liquidation to obtain judicial review of the reclassification of its merchandise. *See* Def.'s Resp. to Pl.'s Prehearing Memo. at 17. However, U.S. Customs did not wait until liquidation to assess duties based on the reclassification — even though, as the government does not dispute, the agency has no legal authority to assess duties (including estimated duties) before the classification of an entry becomes final, *i.e.,* at liquidation.[6] If U.S. Customs does not wait until liquidation to assess duties based on a reclassification, NWFP should not have to wait until liquidation to obtain judicial review of the reclassification.

---

[5] The government's sweeping statement that the CIT has "exclusive jurisdiction to entertain a classification dispute" is demonstrably false. If U.S. Customs assess penalties under 19 U.S.C. § 1592(a) based on an alleged misclassification, there is no question that this Court would have to decide the classification issue in a *Trayco* penalty refund action and that the CIT, therefore, does not have "exclusive jurisdiction to entertain a classification dispute."

[6] As indicated above, the government's remedy against importers who fail to attach estimated AD/CVDs to an entry summary covering subject merchandise is to reject the entry or, alternatively, to pursue liquidated damages or penalties, if appropriate, after liquidation.

With respect to the timing of liquidation, the government does not deny that when an entry is reclassified under a CVD order, liquidation may not occur for years. *See* Pl.'s Prehearing Memo. Ex. A;[7] Therefore, it would be inappropriate to require NWFP to await a future remedy under 19 U.S.C. § 1514(a)(5) and 28 U.S.C. § 1581(a) in this case. *McCarthy,* 503 U.S. at 146-49 (requiring exhaustion of administrative remedy inappropriate if there is "an unreasonable or indefinite timeframe" for obtaining relief); *Gibson v. Berryhill,* 411 U.S. 564, 575 n.14 (1973) (administrative remedy deemed inadequate "most often . . . because of delay" in obtaining relief); *see also Walker v. Southern R. Co.,* 385 U.S. 196, 198 (1966) (requiring exhaustion inappropriate where it could take many years to obtain relief); *cf.* Administrative Procedure Act, 5 U.S.C. § 703 ("The form of proceeding for judicial review is the **special statutory review proceeding** relevant to the subject matter in a court specified by statute **or, in the absence or inadequacy thereof, any applicable form of legal action** . . . in a court of competent jurisdiction.") (emphasis added); *id.* § 704 ("Agency action made reviewable by statute **and final agency action for which there is no other adequate remedy in a court** are subject to judicial review.") (emphasis added); *McCall Stock Farms Inc. v. United States,* 14 F.3d 1562 (Fed. Cir. 1993) (the APA "govern[s] judicial review of agency action in the Court of Claims") (citing *Foote Mineral Co. v. United States,* 228 Ct. Cl. 230, 654 F.2d 81, 85 (1981)).

[7] The government contends that the hypothetical import scenarios that NWFP provided to the Court are "wholly unsupported by law." This is incorrect. The scenarios are based on, and serve merely to illustrate, the lengthy discussion of the statutory and regulatory scheme set forth at pages 9-13 of NWFP's opposition to the government's motion to dismiss and at page 13 of NWFP's prehearing memorandum. This illustration was provided for the Court's convenience so that the complicated statutory review scheme could be understood more easily.

## III. THE GOVERNMENT'S ARGUMENT THAT JURISDICTION "MAY" EXIST UNDER SECTION 1581(I) IS WITHOUT MERIT.

The government argues for the first time in its prehearing brief that the CIT "may" have jurisdiction over NWFP's claim under 28 U.S.C. § 1581(i). *See* Def.'s Resp. to Pl.'s Prehearing Memo. at 19. In *Trayco,* the Federal Circuit considered the possibility of an alternative remedy under 28 U.S.C. § 1581(i)[8] and refused to read that provision expansively to allow refund actions arising from non-"protestable" assessments. *Trayco,* 994 F.2d at 835 ("In subsections (a)-**(i)** of section 1581, Congress specifically enumerated the types of actions against the United States over which the Court of International Trade has exclusive jurisdiction. The government is asking us to look beyond the plain language of the statute to the legislative history and conclude that this importer-initiated suit for refund of a penalty is within the exclusive jurisdiction of the Court of International Trade.").

In addition, the argument that jurisdiction "may" exist over NWFP's claim under 28 U.S.C. § 1581(i) is inconsistent with the position the government has taken, and the Federal Circuit has accepted, in numerous cases since the enactment of the Customs

---

[8] This subsection reads as follows:

> (i) In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)-(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for —
>
> (1) revenue from imports or tonnage;
>
> (2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
>
> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

28 U.S.C. § 1581.

Court Act of 1980, *i.e.,* that review of a classification decision cannot be had under 28 U.S.C. § 1581(i) unless the importer can show that it will go out of business or suffer other "serious" irreparable harm as a result of the decision before it could obtain review under 28 U.S.C. § 1581(a). *See Norcal/Crosetti Foods, Inc. v. United States,* 963 F.2d 356, 359 (Fed. Cir.1992); *National Corn Growers Ass'n v. Baker,* 840 F.2d 1547, 1557 (Fed. Cir. 1988); *Miller & Co. v. United States,* 824 F.2d 961, 963 (Fed. Cir.1987), *cert. denied,* 484 U.S. 1041 (1988); *American Air Parcel Forwarding v. United States,* 718 F.2d 1546, 1550-51 (Fed. Cir.1983), *cert. denied,* 466 U.S. 937 (1984); *United States v. Uniroyal, Inc.,* 687 F.2d 467, 471 (Ct. Cust. & Pat. App. 1982); *see also American Bayridge Corp. v. United States,* 35 F. Supp. 2d 922 (Ct. Int'l Trade 1998) (noting that the plaintiffs voluntarily dismissed a prior action under 28 U.S.C. § 1581(i) after the government raised jurisdictional objections), *vacated in part as moot,* 1999 WL 997303, at *1 n.1 (Fed. Cir. Oct. 26, 1999).[9]

In short, the government's argument that the CIT "may" have jurisdiction under 28 U.S.C. § 1581(i) over refund actions arising from non-"protestable" exactions is speculative, was implicitly rejected in *Trayco,* and is inconsistent with the narrow reading of 28 U.S.C. § 1581(i) adopted by the Federal Circuit at the government's behest in *Uniroyal* and its progeny.

## IV. THIS COURT CLEARLY HAS JURISDICTION OVER NWFP'S REFUND CLAIM

The government contends that NWFP "has incorrectly characterized its case as a penalty refund case." Def.'s Resp. to Pl.'s Prehearing Memo. at 16. This is not true.

[9] Though NWFP cited the foregoing decisions at page 11 of its opposition, the government has failed to address, let alone distinguish, any of them. Nor has the government suggested that the classification decision at issue will cause NWFP to go out of business or suffer other "serious" irreparable harm before liquidation, as these decisions hold is a prerequisite for an action under 28 U.S.C. § 1581(i).

NWFP has characterized its case as an action for a refund of monies paid under protest to satisfy a non-protestable demand by U.S. Customs.

The government also contends, without any authority or analysis, that "[t]he gap in the Court of International Trade's jurisdiction found in *Trayco* is a very narrow one." *See* Def.'s Resp. to Pl.'s Prehearing Memo. at 16. In *Trayco,* the government argued that there was no gap at all. *See* Pl.'s Prehearing Memo. at 25-26. The Federal Circuit rejected this argument. *See id.; Trayco,* 994 F.2d at 835 ("We reject the government's argument and conclude that if Congress had intended all import-related matters to come within the exclusive jurisdiction of the Court of International Trade it would have specifically said so."); *accord K-Mart Corp. v. Cartier, Inc.,* 485 U.S. 176 (1988). In *High Star Toys v. United States,* 32 Fed. Cl. 176 (1994), the government was forced to concede that there was a gap but argued that the gap is very narrow and, indeed, limited to the precise facts of *Trayco* (*i.e.,* that the gap covers only actions for refund of penalties assessed under 19 U.S.C. § 1592(a)). *See* Pl.'s Prehearing Memo. at 28-29. This Court rejected that argument and found jurisdiction in a case involving a refund of money paid under protest to satisfy a non-protestable demand for money in lieu of forfeiture under 19 U.S.C. § 1595(a). *See id.*

In view of this history, the government's *ipse dixit* that "[t]he gap in the Court of International Trade's jurisdiction found in *Trayco* is a very narrow one" lacks credibility.[10] If *Trayco* were properly read as limited to its precise facts, this Court would not have found jurisdiction in *High Star Toys*.

[10] Indeed, at five different places in its brief, the government continues to make the argument that the Customs Court Act of 1980 created a "comprehensive scheme" for judicial review of agency action under the customs laws. *See* Def.'s Resp. to Pl.'s Prehearing Memo. at 4, 5, 11, 12 & 20.

The government attempts to avoid the rationale of *Trayco* by suggesting that the gap in that case arose from the absence of a provision for importer-initiated suits for a refund of penalties paid under protest that correlated with the provision for government-initiated suits to collect penalties under 28 U.S.C. § 1582(1). As NWFP has demonstrated, however, a similar gap exists in this case. The government does not deny that if NWFP had refused to pay the assessment of AD/CVDs, U.S. Customs could have brought suit to collect the assessment under 28 U.S.C. § 1582(2) or (3).[11] That being the case, the rationale of *Trayco* clearly applies, and there is no principled basis for distinguishing that decision. It makes no sense to read *Trayco* as requiring importers to sit back and refuse to pay a demand for payment by U.S. Customs simply because the agency's collection remedy is under subsections (2) and (3) of 28 U.S.C. § 1582 as opposed to subsection (1).

## V. THE ASSESSMENT AND COLLECTION OF MONEY IS CLEARLY AN "EXACTION."

The government argues for the first time in its prehearing brief, without any authority or analysis, that "no exaction occurred in this case." *See* Def.'s Resp. to Pl.'s Prehearing Memo. at 19. It is well-established, however, that the assessment and collection of money by the government constitutes an "exaction," as this Court recognized at the April 22, 2004, hearing. *See Trayco,* 994 F.2d at 837 ("Trayco alleges that the Customs Service improperly assessed and exacted a penalty from Trayco under 19 U.S.C. § 1592(a), (c). The refund of a penalty improperly exacted pursuant to an Act of Congress is a substantive right for money damages.") (citations omitted); *High Star*

[11] As indicated above, U.S. Customs deliberately chose not to reject the entries in suit, which would have allowed a protest and review in the CIT under 28 U.S.C. § 1581(a).

*Toys,* 32 Fed. Cl. at 178 ("Plaintiff's Tucker Act claim for a refund is founded on alleged violations of the U.S. customs laws. Historically, refunds for improper collections of customs duties . . . have been considered to be within the scope of the Tucker Act. For purposes of dismissal on the pleadings under RCFC 12(b)(1), the complaint states claims within the subject matter jurisdiction of this court.") (citations omitted).[12]

Accordingly, the government's argument that NWFP has failed to allege an unlawful "exaction" is without merit and should be rejected.

## VI. U.S. CUSTOMS CLEARLY VIOLATED THE MOD ACT

The CIT held in *Bayridge* that Section 625(c) of the Customs Modernization and Informed Compliance Act ("the Mod Act"), Pub. L. 103-182, § 623, 107 Stat. 2186 (1993) (codified at 19 U.S.C. § 1625(c)),[13] confers a right on importers to rely upon, and be treated in accordance with, relevant Customs Service Rulings and prior treatments of substantially identical transactions unless and until those rulings and treatments are revoked or modified in a notice and comment proceeding. *See* 35 F. Supp. 2d at 941

---

[12] *See also United States v. Schoverling,* 146 U.S. 76 (1892) (common law action to recover customs duties unlawfully assessed and paid under protest); *Seeberger v. Farwell,* 139 U.S. 608 (1891) (same); *Magone v. Luckemeyer,* 139 U.S. 612, 614 (1891) (same); *Worthington v. Robbins,* 139 U.S. 337 (1891) (same); *Merritt,* 104 U.S. 694 (same); *United States v. Levitt,* 26 Fed. Cas. 919 (D. Mass. 1842) (same).

[13] This provision reads as follows:

> **(c) Modification and revocation**
>
> A proposed interpretive ruling or decision which would —
>
> (1) modify (other than to correct a clerical error) or revoke a prior interpretive ruling or decision which has been in effect for at least 60 days; or
>
> (2) have the effect of modifying the treatment previously accorded by the Customs Service to substantially identical transactions;
>
> shall be published in the Customs Bulletin. The Secretary shall give interested parties an opportunity to submit, during not less than the 30-day period after the date of such publication, comments on the correctness of the proposed ruling or decision. After consideration of any comments received, the Secretary shall publish a final ruling or decision in the Customs Bulletin within 30 days after the closing of the comment period. The final ruling or decision shall become effective 60 days after the date of its publication.

19 U.S.C. § 1625(c).

("Customs acted contrary to 19 U.S.C. § 1625(c) when it stated [before revocation] that . . . third parties were not entitled to rely on the North Star Ruling. As discussed, publication and the date any change goes into effect are mandatory commands to Customs. The statute is clear that a proposed interpretive ruling or decision which would modify or revoke a prior interpretive ruling in effect for sixty days shall be published. Customs did not follow the statutory mandate because it made the ruling effective immediately with respect to all importers except North Star.").

Similarly, the CIT held in *Precision Specialty Metals, Inc. v. United States,* 182 F. Supp. 2d 1314 (Ct. Int'l Trade 2001), that importers are entitled to rely upon the "treatment" previously accorded by U.S. Customs to their entries, even in the absence of a ruling issued to another importer involving substantially identical merchandise, and even if such treatment does not reflect a "uniform and established practice" of the agency. *Id.* at 1326.

In this case, U.S. Customs violated Section 625(c) when it issued a classification decision that had the effect of revoking or modifying:

(a) Customs Service Ruling 087616 (Aug. 20, 1990) ("[e]dge-glued lumber does not meet the definition of lumber in . . . heading 4407"); *see also* Customs Service Ruling I85263 (Sept. 12, 2002) (classifying merchandise similar to the subject merchandise under Heading 4421, HTSUS); Customs Service Rulings B80847 (Jan. 23, 1997) (same); and

(b) the treatment of NWFP's entries of subject merchandise from March through September 2003 (*i.e.,* the approval of numerous entry summaries with no estimated AD/CVDs attached).

The reclassification announced in the CF-29 issued to NWFP fits the literal description of an "interpretive decision," because it determines the classification of

merchandise based on a conclusion about the meaning and application of the terms of the competing tariff provisions by the National Import Specialist.

Moreover, Section 625(c) was intended to remedy the lack of certainty and predictability in customs administration that resulted from U.S. Customs' historic power to make retroactive changes to its treatment of particular imports. *See* Pl.'s Prehearing Memo. at 4-10 (examining the legislative history of the statute). In cases of ambiguity, remedial statutes must be liberally construed to effectuate their purposes. *See, e.g., Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 268 (1977); *Voris v. Eikel,* 346 U.S. 328, 333 (1953).[14] Thus, any doubt about whether a classification decision announced in a CF-29 is an "interpretive decision" within the meaning of Section 625(c) must be resolved in favor of the importing community. The Mod Act's fundamental purpose of imparting certainty and predictability to customs administration would be defeated if U.S. Customs is allowed to issue, without following the procedure prescribed by the statute, a classification decision that is not in accordance with a relevant Customs Service Ruling or a prior treatment of the importer's entries.

In sum, NWFP's complaint clearly alleges a violation of the Mod Act in support of its unlawful exaction claim. *See also* 19 C.F.R. § 152.11 ("Merchandise shall be classified in accordance with the [HTSUS] **as interpreted by** administrative and **judicial rulings**.") (emphasis added).

## VII. CONCLUSION

A court "ha[s] no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. (6 Wheat.) at 404.

---

[14] *Cf. Anhydrides & Chemicals Inc. v. United States,* 130 F.3d 1481 (Fed. Cir. 1997) (ambiguities in tariff provisions "'are construed most strongly against the government, and in favor of the . . . citizens"); *Merritt,* 104 U.S. at 704 (1881) ("Discretion in the custom-house officer should be limited as strictly as possible.").

This principle is most commonly stated in decisions rejecting precisely the sort of arguments made by the government in this case, *i.e.*, that the availability of administrative remedies precludes the exercise of jurisdiction over a plaintiff's judicial review claim. *See, e.g., McCarthy v. Madigan,* 503 U.S. 140; *see also Haun,* 124 F.3d 745 ("A federal court may not abdicate its adjudicative duty simply because an action sounds an administrative tone."). This Court should follow these decisions and reject the government's exhaustion arguments here.

DOC has stated with the utmost clarity that U.S. Customs may not require payment of estimated AD/CVDs on edge-glued wood properly classified in Item 4421.90.97.40, HTSUS. It would be pointless, and would unduly burden both the agency and importers, to require "clarification" in such circumstances. Moreover, DOC cannot afford complete relief to NWFP, because the agency is not empowered to review the reclassification of NWFP's merchandise by U.S. Customs.

While the CIT could afford relief from the classification issue in an action to contest the denial of a protest of the liquidation of the subject entries, liquidation has been suspended and may not occur for years, during which time NWFP's valuable statutory rights will be nullified. This case is not just about past transactions, and it is not just about a single importer. It raises a fundamental issue of broad public importance that cries out for prompt judicial attention — namely, whether the *Merritt-Worthington* doctrine has any practical significance today. Every day that passes without a final judicial resolution of this issue is another day that NWFP and countless other importers are deprived of the certainty and predictability that the *Merritt-Worthington* doctrine, and Section 625(c) of the Mod Act, were supposed to guarantee.

For these reasons, NWFP respectfully requests that the government's motion to dismiss be denied.