# United States Court of Appeals for the Federal Circuit

05-5007

FOREST PRODUCTS NORTHWEST, INCORPORATED,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

## Judgment

*ON APPEAL from the* UNITED STATES COURT OF FEDERAL CLAIMS

*in CASE NO(S).* 03-CV-2485

*This CAUSE having been heard and considered, it is*

*ORDERED and ADJUDGED:*

AFFIRMED

*ENTERED BY ORDER OF THE COURT*

*DATED* JUL 5 2006

Jan Horbaly
*Jan Horbaly, Clerk*

Issued as Mandate: AUG 28 2006
COSTS:
Printing .................................. $226.40
Total.................................. $226.40

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Gordon Brown Date: 8/28/06

# United States Court of Appeals for the Federal Circuit

05-5007

FOREST PRODUCTS NORTHWEST, INCORPORATED,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Kenneth G. Weigel, Alston & Bird, LLP, of Washington, DC, argued for plaintiff-appellant.

Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Patricia M. McCarthy, Assistant Director, and Claudia Burke, Trial Attorney.

Appealed from: United States Court of Federal Claims

Judge Lawrence J. Block

# United States Court of Appeals for the Federal Circuit

05-5007

FOREST PRODUCTS NORTHWEST, INCORPORATED,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: July 5, 2006

---

Before SCHALL, Circuit Judge, CLEVENGER, Senior Circuit Judge, and PROST, Circuit Judge.

CLEVENGER, Senior Circuit Judge.

Plaintiff-Appellant Forest Products Northwest, Inc. (Forest Products) appeals the decision of the United States Court of Federal Claims holding that it did not have jurisdiction over Forest Products's claim for a refund of antidumping and countervailing duties paid to the United States Customs and Border Protection, Department of Homeland Security (Customs). Forest Prods. Nw., Inc. v. United States, 62 Fed. Cl. 109 (2004). Forest Products also asserts that the Court of Federal Claims abused its discretion in denying its motion for a protective order. Because we agree with the Court of Federal Claims that it does not have jurisdiction over Forest Products's claim, and because the court did not abuse its discretion in denying Forest Products's motion for a protective order, we affirm.

I

In October 2003, Forest Products imported two shipments of lumber from Canada. The first shipment of merchandise, Entry No. WQO-1289736-0, was entered under Subheading 4407.10.0068 of the Harmonized Tariff Schedule of the United States (HTSUS), the tariff provision for "[w]ood sawn or chipped lengthwise, sliced or peeled, whether or not planed, sanded or finger-jointed, of a thickness exceeding 6 mm: Coniferous." The second shipment, Entry No. WQO-1289757-6, was entered under HTSUS subheading 4421.90.9740, the provision for "other articles of wood . . . ." Both entries were allegedly subject to antidumping and countervailing duty orders. See Notice of Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,068 (May 22, 2002); Notice of Amended Final Affirmative Countervailing Duty Determination and Notice of Countervailing Duty Order: Certain Softwood Lumber Products from Canada, 67 Fed. Reg. 36,070 (May 22, 2002). Thus, Forest Products paid estimated antidumping and countervailing duties, at the time of importation, in the amount of $20,357.84. However, Forest Products asserted that it was paying these duties "under protest."

On October 21, 2003, Forest Products filed suit against Defendant-Appellee the United States (government) in the Court of Federal Claims, asserting three contentions: first, that Customs misclassified the subject imports; second, that Customs violated the Customs Modernization Act (Mod Act), codified at 19 U.S.C. § 1625, by failing to follow another Customs ruling; and finally, that Customs erred in applying the antidumping and countervailing duty orders to the subject imports.

On January 28, 2004, the government filed a motion to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). Forest Products filed an opposition to the government's motion to dismiss on February 10, 2004, but did not serve a copy on the government. Rather, Forest Products requested a protective order and stated that it would not serve a copy of its opposition upon the government until such protective order was in place. The Court of Federal Claims ordered Forest Products to serve a copy of the opposition upon the government, and Forest Products did so on April 1, 2004. The court denied Forest Products's motion for a protective order on April 22, 2004, and on September 17, 2004, the court granted the government's motion to dismiss. See Forest Products, 62 Fed. Cl. 109. Forest Products timely appealed to this court, and we have jurisdiction over the appeal pursuant to 28 U.S.C. § 1295(a)(3).

II

Before assessing whether jurisdiction over the instant case lies in the Court of Federal Claims, it is helpful to understand the statutory and regulatory scheme governing duties paid on imports, including countervailing and antidumping duties. When an importer wishes to import merchandise into the United States, it must make an "entry" by filing documentation with Customs. This documentation enables Customs to properly assess the duties due on the merchandise. See Wolff Shoe Co. v. United States, 141 F.3d 1116, 1118 (Fed. Cir. 1998) (citing 19 U.S.C. § 1484). At the time of entry, "[t]he importer must also deposit estimated duties with Customs." Id. (citing 19 U.S.C. § 1505(a)). After the proper documents are filed and the estimated duties are

deposited, "the imported merchandise can pass into the commerce of the United States." Id. (citing 19 U.S.C. § 1490).

At some later time, "Customs reviews the entry and makes its final determination as to whether the amount of duty deposited is correct--i.e., Customs liquidates the entry." Travenol Labs., Inc. v. United States, 118 F.3d 749, 752 (Fed. Cir. 1997) (citing 19 C.F.R. §§ 159.0-.12 (1996)). Liquidation is "the final computation or ascertainment [by Customs] of the duties . . . or drawback accruing on an entry." 19 C.F.R. § 159.1 (2004). During liquidation, "Customs will collect any increased duties due or refund any excess of the estimated duties deposited on entry." Wolff Shoe, 141 F.3d at 1118 (citing 19 U.S.C. § 1505(b)). Liquidation of an entry is "final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed . . . or unless a civil action contesting the denial of a protest . . . is commenced in the United States Court of International Trade." 19 U.S.C. § 1514(a) (2000).

Entries not liquidated within one year of entry are "deemed liquidated" unless one of several exceptions applies. See 19 U.S.C § 1504(a), (b) (2000) (providing that entries are deemed liquidated after one year unless liquidation is "suspended as required by statute or court order" and allowing the Secretary of the Treasury to extend the period in which to liquidate an entry if "the information needed for the proper appraisement or classification of the merchandise" is unavailable or if the importer "requests such extension and shows good cause therefor"). Thus, for example, the Court of International Trade "may enjoin the liquidation of some or all entries of merchandise covered by [an antidumping or countervailing duty order]." 19 U.S.C. § 1516a(c)(2) (2000). Further, liquidation of all entries of merchandise subject to a

particular outstanding antidumping or countervailing duty order is suspended during Customs' annual review of that order. See 19 U.S.C. § 1675 (2000); 19 U.S.C § 1504; Wolff Shoe, 141 F.3d at 1118.

Once an entry has been liquidated, the importer may lodge a protest with Customs under section 515 of the Tariff Act of 1930, codified at 19 U.S.C. § 1515. That protest will be allowed or denied within two years of filing. 19 C.F.R. §§ 174.21, .29 (2004). An importer may file for an accelerated disposition of the protest 90 days after filing, and, if the port director does not allow or deny the protest within 30 days, the protest is deemed denied. 19 C.F.R. § 174.22 (2004). If Customs denies a protest, the importer may appeal to the Court of International Trade within 180 days of the denial. 19 U.S.C. § 1515 (2000); 19 C.F.R. § 174.31 (2004). The review of denials of protests is within the exclusive jurisdiction of that court. 28 U.S.C. § 1581(a) (2000).

In this case, Forest Products's entries have not yet been liquidated, as there is an ongoing administrative review of the relevant antidumping and countervailing duty orders, such that liquidation has been suspended. Thus, Forest Products cannot yet file a protest with Customs, nor is there a denial of a protest that may be reviewed by the Court of International Trade. However, importers may also seek review of antidumping or countervailing duties by requesting a scope ruling from the Department of Commerce (Commerce). That is, "[a]ny interested party may apply [to Commerce] for a ruling as to whether a particular product is within the scope of an order or a suspended investigation." 19 C.F.R. § 351.225(c)(1) (2004). If Commerce concludes that the imported merchandise is not within the scope of the antidumping or countervailing duty order, Commerce will order Customs to refund any cash deposits paid by the importer.

19 C.F.R. § 351.225(l)(2)-(3). If Commerce concludes that the imported merchandise is within the scope of the relevant order, the importer may seek review of that decision in the Court of International Trade under section 516 of the Tariff Act of 1930, codified at 19 U.S.C. § 1516a. See 28 U.S.C. § 1581(c); 19 U.S.C. § 1516a(a)(2)(B)(vi) (stating that an importer may seek review in the Court of International Trade of "[a] determination by the administering authority as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order"). However, Forest Products has not requested a scope ruling from Commerce.

III

Whether the Court of Federal Claims has jurisdiction over the instant case is a question of law that we review de novo. Wheeler v. United States, 11 F.3d 156, 158 (Fed. Cir. 1993). We review discovery matters for an abuse of discretion.[1] See Commessariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1319 (Fed. Cir. 2005).

Section 1491 of Title 28 grants the Court of Federal Claims jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." However, that statute does not create any substantive right for monetary damages. United States v. Mitchell, 445 U.S. 535, 538 (1980). Rather, a

---

[1] The Rules of the Court of Federal Claims address protective orders only in the context of discovery. See RCFC 26 ("General Provisions Governing Discovery; Duty of Disclosure"); RCFC 26(c) ("Protective Orders").

plaintiff must plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. See Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000) (citing Mitchell, 463 U.S. at 216; United States v. Testan, 424 U.S. 392, 400 (1976)). In addition, the Tucker Act specifically carves out jurisdiction over "any civil action within the exclusive jurisdiction of the Court of International Trade . . . ." 28 U.S.C. § 1491(c) (2000). Thus, if this case is within the jurisdiction of the Court of International Trade, it cannot be within the jurisdiction of the Court of Federal Claims.

In order to sue in the Court of Federal Claims, Forest Products must assert an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. If Forest Products were seeking review of a denied protest or an adverse scope ruling, sections 515 and 516A of the Tariff Act of 1930, described above, would provide Forest Products with a substantive right to money damages. However, exclusive jurisdiction over cases filed under these statutory provisions is vested in the Court of International Trade. See 28 U.S.C. § 1581(a), (c). As such, these statutory provisions do not allow Forest Products to avail itself of the Court of Federal Claims.

In addition, to the extent that any other federal statute or constitutional provision may provide Forest Products with a substantive right to money damages, jurisdiction over such a case would also fall within the exclusive jurisdiction of the Court of International Trade, and thus would not fall within the jurisdiction of the Court of Federal Claims. The catch-all provision of the jurisdictional statute of the Court of International

Trade, 28 U.S.C. § 1581(i), provides that the Court of International Trade has "exclusive jurisdiction of any civil action . . . that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" as well as "administration and enforcement with respect to [such] matters."[2] Forest Products argues that it was improperly required to pay antidumping and countervailing duties. Such duties are levied on subsidized imports so as to offset the unfair competitive advantages created by foreign subsidies. See Wolff Shoe, 141 F.3d at 1117; 19 U.S.C § 1671 (2000). Thus, if Forest Products has stated a claim for relief, such an action would "arise[ ] out of [a] law . . . providing for tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" under subsection 1581(i) and would be committed to the exclusive jurisdiction of the Court of International Trade. Indeed, in its brief to this court, Forest Products states that its claim for a refund of the duties "is a claim against the United States for a money judgment founded on violations of the customs laws." Appellant's Br. at 22 (internal quotations omitted). Further, during oral argument, Forest Products conceded that, if it has stated a claim upon which relief may be granted, under 19 U.S.C § 1581(i) such a claim may properly fall within the jurisdiction of the Court of International Trade.

Forest Products relies on Trayco, Inc. v. United States, 994 F.2d 832 (Fed. Cir. 1993), to bolster its argument that jurisdiction over the instant case lies within the Court

---

[2] Subsection 1581(i) notes that it does "not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . ." However, as discussed above, such a case would be within the jurisdiction of the Court of International Trade under subsection 1581(c).

of Federal Claims. In Trayco, this court found that the district court had jurisdiction over a case commenced by an importer "for refund of a penalty improperly assessed and exacted under 19 U.S.C. § 1592(a), (c)," as Congress had not "explicitly" granted the Court of International Trade jurisdiction over such a case. Id. at 836-37. However, Trayco is inapposite here. First of all, Trayco did not address the jurisdiction of the Court of Federal Claims under the Tucker Act, but rather addressed the jurisdiction of district courts under the Little Tucker Act, 28 U.S.C. § 1346. The Little Tucker Act, unlike the Tucker Act, does not expressly exempt any case falling within the jurisdiction of the Court of International Trade. See 28 U.S.C. § 1346 (2000); 28 U.S.C. § 1491(c). In addition, in Trayco, the plaintiff did not seek a refund of antidumping or countervailing duties or other import duties, but rather sought a refund of a penalty imposed for a violation of 19 U.S.C. § 1592(a), (c). 994 F.2d at 836. In Trayco, this court found that Congress had not explicitly vested jurisdiction over such a claim in the Court of International Trade. Id. In contrast, Congress has explicitly vested exclusive jurisdiction over a claim for a refund of antidumping or countervailing duties in the Court of International Trade, as described above. Finally, in Trayco, this court found that an illegal exaction had occurred, such that the plaintiff had asserted a substantive right enforceable against the United States for money damages and that jurisdiction lay within the district court under the Little Tucker Act. Id. at 837 (internal quotation omitted). In this case, Forest Products has not alleged that an illegal exaction has taken place, but is seeking a refund of antidumping and countervailing duties.

In short, Forest Products has failed to assert a cause of action within the jurisdiction of the Court of Federal Claims. Forest Products has not asserted an

independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages and which is not committed to the exclusive jurisdiction of the Court of International Trade. Thus, the Court of Federal Claims does not have jurisdiction over Forest Products's claim.

IV

Finally, Forest Products alleges that the Court of Federal Claims abused its discretion in denying Forest Products's motion for a protective order. Forest Products's opposition to the government's motion to dismiss contained information regarding a Customs investigation, which Forest Products believed to be confidential. However, the court ordered Forest Products to serve its opposition on the government and subsequently denied Forest Products's motion for a protective order. Forest Products argues that the court should have granted the motion for a protective order or should have returned the materials submitted with that motion when it was denied.

The Court of Federal Claims "may make any order which justice requires to protect a party or person from . . . embarrassment." RCFC 26(c). A movant for a protective order must confer or attempt to confer with the other affected parties to resolve the dispute and must show "good cause" why a protective order should issue. RCFC 26(c). Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden. Capital Props., Inc. v. United States, 49 Fed. Cl. 607, 611 (2001).

In this case, Forest Products neither conferred with the government to resolve the dispute nor demonstrated good cause. As the Court of Federal Claims noted,

Forest Products did not explain how the information contained in the response to the motion to dismiss would cause embarrassment. Forest Products, 62 Fed. Cl. at 114 (stating that Forest Products did not "detail how the purported Customs investigation currently affects its business operations, its public persona, or the privacy of its principals"). Further, the Court of Federal Claims was correct in finding that the existence of the Customs investigation was irrelevant to Forest Products's claim, as it was unnecessary to discuss that investigation in order to determine that the Court of Federal Claims does not have jurisdiction over the case.

Forest Products also argues that the Court of Federal Claims erred in making the disclosure order effective immediately, as opposed to keeping the documents under seal pending appeal of the court's denial of the motion. However, because the court did not abuse its discretion in denying the motion for a protective order, it was not an abuse of discretion to make the disclosure of the documents effective immediately. Finally, Forest Products argues that the Court of Federal Claims should have returned the documents submitted with the motion for a protective order when that motion was denied. However, Forest Products never requested that the Court of Federal Claims return the submitted documents. Further, there is no provision in the Rules of the Court of Federal Claims for the return of documents submitted with a motion for a protective order or with a motion for leave to file under seal. As such, the Court of Federal Claims did not abuse its discretion in denying the motion for a protective order, or in making public the files submitted by Forest Products along with that motion.

For these reasons, and the reasons set forth above, we affirm.

AFFIRMED

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: Judith Braun Date: 8/28/06

BILL OF COSTS (File original and three copies with the Clerk within 14 days of judgment)

Docket No(s): 05-5007 Caption: FOREST PRODUCTS v US

Clerk is requested to tax the following costs against: Forest Products Northwest, Inc., Plaintiff-Appellant

FILED U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT JUL 19 2006 JAN HORBALY CLERK

| ITEM | Number of copies | Number of pages | Actual cost | Allowable cost | Total billed | Total taxed |
|---|---|---|---|---|---|---|
| Docketing Fee (if paid in this court) | xxxxx | xxxxx | | | | |
| Table of Designated Materials (original) | xxxxx | | | 6.00 | | |
| Table or Compilation of Designated Materials (copying and collating) | | | | 0.08 | | |
| Brief (original) | xxxxx | 27 | 6.00 | 6.00 | 162.00 | 162.00 |
| Brief (cover and binding) | 16 | xxxxx | 2.00 | 2.00 | 32.00 | 32.00 |
| Brief (copying and collating) | 15 | 27 | 0.08 | 0.08 | 32.40 | 32.40 |
| Appendix (original-table of contents) | xxxxx | xxxxx | xxxxx | 6.00 | | |
| Appendix (covers and binding) | xxxxx | xxxxx | | 2.00 | | |
| Appendix (copying and collating) | | | 0.08 | 0.08 | | |
| Reply Brief (original) | xxxxx | | | 6.00 | | |
| Reply Brief (covers and binding) | | xxxxx | | 2.00 | | |
| Reply Brief (copying and collating) | | | | 0.08 | | |
| Other (describe): | | | | | | |
| GRAND TOTALS | | | | | 226.40 | 226.40 (jb) |

City/County of Washington ) District/State of Columbia ) SS

I, Claudia Burke swear under penalty of perjury that the services for which costs are taxed were necessarily performed. Copies of this bill were served on all parties.

Signature: [signature] Date: 7/18/06 Attorney for: Defendant-Appellee

RECEIVED 2006 JUL 19 AM 11:27

CERTIFIED COPY
I HEREBY CERTIFY THIS DOCUMENT IS A TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE.
UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT
By: [signature] Date: 8/28/06

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury on this 19th day of July, 2006, I caused to be placed in the United States mail (first class mail, postage prepaid) copies of "DEFENDANT-APPELLEE'S BILL OF COSTS" addressed as follows:

Kenneth G. Weigel
Alston & Bird, LLP
601 Pennsylvania Avenue, N.W.
North Building, Tenth Floor
Washington, DC 20004-2601

Risa Rain